1    Andrew K. Alper (State Bar No. 088876)
     aalper@frandzel.com
2    FRANDZEL ROBINS BLOOM & CSATO, L.C.
     1000 Wilshire Boulevard, Nineteenth Floor
3    Los Angeles, California 90017-2427
     Telephone: (323) 852-1000
4    Facsimile: (323) 651-2577

5    Attorneys for Plaintiff Eastern Funding, LLC

6

7

8                    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11   EASTERN FUNDING LLC, a subsidiary of        Case No.
     Brookline Bank, a Delaware limited liability
12   company,                                    COMPLAINT FOR:

13                    Plaintiff,                  1.  BREACH OF SECURED PROMISSORY
                                                     NOTES AND AGREEMENTS;
14            v.
                                                 2.  BREACH OF GUARANTEES;
15   TRIPLE J INDUSTRIES LLC, a California
     limited liability company, TRIPLE J         3.  CLAIM AND DELIVERY; and
16   LAUNDROMAT LLC, is a California limited
     liability company, SPARKLE CLEAN            4.  CONVERSION
17   LAUNDROMAT LLC, a California limited
     liability company; DANIEL LEE, an
18   individual; and CHOU YI CHAO, an
     individual,
19
                     Defendants.
20

21

22

23

24

25

26

27

28

Plaintiff alleges as follows:

## **GENERAL ALLEGATIONS**

1.    At all times relevant herein, Plaintiff, Eastern Funding LLC, a subsidiary of Brookline Bank, a Delaware limited liability company ("Plaintiff") was and still is a limited liability company duly organized under and virtue of the laws of the State of Delaware with its principal place of business in New York, NY and is qualified and authorized to do business in the State of California.

2.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Triple J Industries LLC was, and still is, a limited liability company organized in the State of California, and conducting its business at 1464 18th Avenue, San Francisco, California 94122.  Plaintiff is informed and believes and thereon alleges that Daniel Lee and Chou Yi Chao are its members and neither member is a resident of the States of Delaware or New York.

3.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Triple J Laundromat LLC was, and still is, a limited liability company with its principal place of business at 14278 E 14th Street, Suite A, San Leandro, California 94578. Plaintiff is informed and believes and thereon alleges that the members of Triple J Laundromat LLC are Daniel Lee and Chou Yi Chao reside in and do business in the jurisdictional limits of this Court.

4.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned that Defendant Sparkle Clean Laundromat, LLC was, and still is, a limited liability company registered with the State of California on July 29, 2014.  Plaintiff is further informed and believes and thereon alleges that Defendant Sparkle Clean Laundromat, LLC is in good standing with the State of California, however, it has also filed a termination of its status in the State of California.  A true and correct copy of the Termination is attached hereto, marked Exhibit "1," and is incorporated herein by this reference.  Defendant Daniel Lee who Plaintiff is informed and believes and thereon alleges is a resident of San Francisco, California is the Agent for Service of Process.  The principal address of Sparkle Clean Laundromat, LLC listed with the California

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

Secretary of State is 2930 Sacramento Street, Berkeley, California 94702.  Plaintiff is informed and believes and thereon alleges that there is a second Sparkle Clean Laundromat with a principal address of 18605 Arguello Avenue, Morgan Hill, California 95037.  The principals and members are different than the Sparkle Clean Laundromat LLC that was terminated and dissolved as set forth in Exhibit "2."  Plaintiff is informed and thereon alleges that Sparkle Clean Laundromat, LLC created in San Francisco, California, is the Defendant herein, but, to the extent it is applicable, Sparkle Clean Laundromat LLC located in Morgan Hill is also referred to herein with the terminated Sparkle Clean Laundromat, LLC as ("Sparkle Clean").  A true and correct copy of the Secretary of State's Statement of Information is attached hereto, marked Exhibit "2," and is incorporated herein by reference.  Plaintiff is informed and believes and thereon alleges that Sparkle Clean is managed and the sole member of Sparkle Clean is Daniel Lee which assumes that the Sparkle Clean Laundromat in Morgan Hill is not the correct Defendant.

5.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Daniel Lee is a resident of the State of California, County of San Francisco, and conducts business at 1464 18th Avenue, San Francisco, California 94122.

6.     Plaintiff is informed and thereon alleges that Defendant Chou Yi Chao ("Chao") is an individual who resides in the State of California, County of San Francisco, and is currently doing business at 1464 18th Avenue, San Francisco, California 94122.

7.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, and each of them, named in the captions of this complaint was and/or is the agent, officer, employee, joint venturer, member, aider and abettor and /or co-conspirator of each of the other defendants, and in acting and/or failing to acts as herein alleged, was so doing in the course and scope of such capacity and relationship.

8.     Jurisdiction is proper under 28 U.S. C., Section 1332(a) in that there is complete diversity of citizenship between Plaintiff and all Defendants in that Plaintiff and all Defendants are not residents of the same States and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

9.     Venue is proper in this Court because Defendants, and each of them, work and

1    reside in the cities of San Francisco or San Leandro, which is within the jurisdiction of the United

2    States District Court for the Northern District of California. Further, personal property which is

3    the subject of this lawsuit is located within the Northern District of California. Further, contracts

4    referred to herein were made and entered into within the jurisdiction limits of the Northern District

5    of the State of California by Defendants and each of them.

6        **A.    TRIPLE J INDUSTRIES LLC, LOAN NO. 14084**

7        10.    On or about August 7, 2020, Plaintiff made a loan to Triple J Industries LLC

8    ("Industries") in the sum of $321,733.20 ("Loan 1"). The loan was for the purpose of acquiring

9    laundry equipment and goods and software related thereto. Pursuant to the terms of a Secured

10   Promissory Note and Agreement ("Note 1"), the principal sum of $321,733.20 with interest

11   thereon was computed at the rate of 6.25% as of August 7, 2020, but would change thereafter

12   based on the Wall Street Journal Prime Rate. Loan 1 was to be paid in 117 consecutively monthly

13   installments, the first three payments of which were interest only in the amount of $1,702.01

14   followed by 114 self-amortizing payments of principal and interest commencing on January 1,

15   2021, and the first day of each and every month thereafter. The maturity date was September 1,

16   2030, when all sums were due and payable. For monthly installments 7 through 60, each monthly

17   payment of principal and interest was $3,808.52 on the due date of each installment and at

18   payment number 60, the interest rate adjusted to prime plus 3%. Further such payments will be

19   adjusted accordingly thereafter, starting with payment 61. A true and correct copy of Note 1 is

20   attached hereto, marked Exhibit "3" and is incorporated herein by this reference.

21       11.    In connection with entering into Loan 1 evidenced by Note 1, Plaintiff was granted

22   a security interest in the various items of equipment and goods set forth on Schedule A to Note 1

23   (the "Note 1 Equipment"). Plaintiff was also granted a blanket lien on all assets of Industries

24   including all machinery, equipment, furniture, fixtures, inventory (raw materials, work-in

25   progress, finished goods and supplies), motor vehicles, leases, finished goods and supplies,

26   contract rights, claim, causes of action, accounts receivable, and any and all tangible and

27   intangible assets and other real and/or person property owned by Industries and all cash and non

28   cash proceeds thereon "the Industries Blanket Lien Collateral." To perfect the security interest in

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.

1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR

LOS ANGELES, CALIFORNIA 90017-2427

(323) 852-1000

1  the Note 1 Equipment and the Industries Blanket Lien Collateral, Plaintiff filed UCC-1 Financing

2  Statements which are attached hereto, marked Exhibit "4," and are incorporated herein by this

3  reference.

4        12.    In connection with entering into Loan 1 evidenced by Note 1, Industries, Sparkle

5  Clean, Triple J Laundromat, LLC ("Laundromat"), and each of them, entered into an Agreement

6  of Cross-Default, Collateral Security, and Guaranty whereby any and all loans entered into by

7  Industries, Sparkle Clean and Laundromat, or any of them, would all be collateralized, cross-

8  defaulted, and guaranteed by each of them.  A true and correct copy of the Agreement of Cross-

9  Default, Collateral Security, and Guaranty is attached hereto, marked Exhibit "5," and is

10  incorporated herein by this reference ("the Cross-Collateral Agreement").

11        13.    In connection with entering into Loan 1 evidenced by Note 1, Loan 1 was

12  personally guaranteed by Defendants Daniel Lee and Chao by an Irrevocable Guaranty which is

13  part of Note 1.

14        14.    Plaintiff has performed all conditions, covenants and promises on its part required

15  to be performed in accordance with the terms of Note 1, the Cross-Collateral Agreement, and the

16  Guarantees.

17  **B.  SPARKLE CLEAN LAUNDROMAT LLC LOAN #13337**

18        15.    On or about September 3, 2019, Plaintiff made a loan to Sparkle Clean in the sum

19  of $947,699.66 ("Loan 2").  Pursuant to the terms of the Secured Promissory Note and Agreement

20  evidencing Loan 2, interest was to accrue at the rate of 8.25% but would change thereafter as set

21  forth below.  Principal and interest was to be paid in 108 self-amortizing consecutive monthly

22  installments commencing on October 10, 2019 and on the 10th day of each month thereafter,

23  through and including September 10, 2028, the maturity date of the Secured Promissory Note and

24  Agreement ("Note 2").  For monthly payments 1 through 60, each monthly payment shall be

25  $12,460.99 and on the due date of installment payment number 60, the annual interest rate

26  adjusted based on the prime rate plus 3% with a floor of no less than 8.25%.  Plaintiff was also

27  granted a lien on all personal property assets of Sparkle Clean as set forth in Section (3) of Note 2

28  (" the Sparkle Clean blanket lien collateral"). In addition, Sparkle Clean also pledged cash

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

collateral of $12,460.99.  A true and correct copy of Note 2 which is the Secured Promissory Note and Agreement is attached hereto, marked Exhibit "6," and is incorporated herein by this reference.

16.    Note 2 was thereafter amended by a letter agreement dated September 10, 2019, changing the dates when the sums had to be paid in accordance with Note 2 from the tenth day of the month to the 11th day of the month. The maturity date of Note 2 was also changed from September 11, 2028. A true and correct copy of the letter is attached hereto, marked Exhibit "7" and incorporated herein by this reference.

17.    Note 2 was also cross-collateralized by assets pledged by Industries and Laundromat and personally guaranteed by Laundromat and Industries pursuant to the Cross-Collateral Agreement.  In addition, Daniel Lee executed a Guaranty of Note 2, and the Guaranty is part of Note 2, Exhibit "5".

18.    Loan 2 as evidenced by Note 2 was modified pursuant to a Modification Agreement on May 28, 2020 whereby Sparkle Clean and Daniel Lee agreed that the amount due was $911,411.74 and the payments were adjusted and changed in accordance with the terms of the Modification Agreement.  A true and correct copy of the Modification Agreement is attached hereto, marked Exhibit "8" and is incorporated herein by this reference.

19.    Plaintiff has performed all conditions, covenants, and promises on its part required to be performed in accordance with the terms Note 2, the Guaranty, the letter agreement, the Modification Agreement and the Cross-Collateral Agreement.

## C. TRIPLE J LAUNDROMAT LLC LOAN#12958

20.    On April 2, 2019, Plaintiff made a loan to Laundromat in the sum of $170,798.16 ("Loan 3").  Pursuant to the terms of a Secured Promissory Note and Agreement ("Note 3"), Loan 3 was secured by dryers and other goods and equipment set forth on Schedule A to Note 3 ("the Note 3 Equipment").  The Note was also secured by the all personal property assets of Laundromat as set forth in section (3) of Note 3 ("the Laundromat Blanket Lien Collateral").  Note 3 was also secured by cash collateral of $2,726.36.  Payments on Loan 3 were to be made commencing April 15, 2019, with the initial interest rate of 8.75%. For monthly installments 1-42

1  payments were $2,726.36. On the 42nd monthly payment date the interest would adjust to Wall

2  Street Journal Prime plus 3.25% which would be fixed at that rate through the remainder of Loan

3  3 but the rate would not be less than 8.75%. All payments were due on the fifteenth (15th) day of

4  the month through and including the maturity date of Loan 3 which was April 15, 2026, when all

5  sums were due.  A true and correct copy of Note 3 is attached hereto, marked Exhibit "9" and is

6  incorporated herein by this reference.

7        21.    Note 3 was also personally guaranteed by Daniel Lee and Chao.  The Guaranty is

8  part of Note 3.

9        22.    Note 3 was secured by certain specific items of equipment and goods and also all

10  personal property assets of Laundromat set forth in Section (3) of Note 3 ("the Laundromat

11  Blanket Lien Collateral").  A true and correct copies of UCC-1 Financing Statements reflecting

12  the perfection of these liens is attached hereto, marked Exhibit "10" and are incorporated herein by

13  this reference.

14        23.    On or about June 11, 2020,  Loan 3 was modified pursuant to a Modification

15  Agreement executed by Laundromat, Daniel Lee, and Chao whereby the balance due was

16  $154,394.26 and payments changed in accordance with the terms of the Modification Agreement.

17  A true and correct copy of the Modification Agreement is attached hereto, marked Exhibit "11"

18  and is incorporated herein by this reference.

19        24.    Plaintiff has performed all conditions, covenants and promises on its part required

20  to be performed in accordance with the terms of Note 3, the Guarantees, the Cross-Collateral

21  Agreement and the Modification Agreement.

22  **D.  TRIPLE J INDUSTRIES LLC LOAN # 12624**

23        25.    On or about November 13, 2018, Plaintiff made a loan to Industries in the sum of

24  $311,386.00 ("Loan 4") pursuant to the terms of a Secured Promissory Note and Agreement

25  ("Note 4"). Interest was it initially accrue at the rate of 8.50% commencing March 1, 2019 and for

26  72 months thereafter. The maturity date of Loan 4 was February 1, 2025, when all sums due were

27  to be paid. For monthly installments 1 through 60 each monthly payment was $5,535.94 and on

28  the due date of installment payment number 60 the annual interest rate would adjust pursuant to

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

the Wall Street Journal Prime plus 3.25% with a floor rate of 8.50%. Thereafter if the Prime Rate remained the same, the remainder of the payments would be $5,535.94 but if the Prime Rate plus 3.25% was greater than 8.50% the payments would adjust to the higher amount to reflect the change., A true and correct copy of the Secured Promissory Note and Agreement is attached hereto, marked "12," and is incorporated herein by this reference.

26.     Note 4 was secured by the Laundromat Blanket Lien Collateral, cash collateral of $5,535.94, and the equipment attached to Schedules A and B to Note 4 ("the Note 4 Equipment").

27.     Note 4 was personally guaranteed by Daniel Lee and Chao and the Guarantees are part of Note 4, Exhibit 11.

28.     Note 4 was modified pursuant to the terms of a Modification Agreement on June 11, 2020, whereby Laundromat, Daniel Lee and Chao agreed the sum due was $262,560.98 and agreed to modify when future payments would be due and fixed the monthly payment amount at $5,654.58.  A true and correct copy of the Modification Agreement is attached hereto, marked Exhibit "13" and is incorporated herein by this reference.

29.     Plaintiff has performed all conditions, covenants and promises on its part required to be performed in accordance with the terms of Note 4, the Modification Agreement, the Cross-Collateral Agreement,  and the Guarantees.

## FIRST CLAIM

**(For Breach of Loan 1, Secured Promissory Note and Agreement #14084, as Against Triple J Industries, Inc. )**

30.     Plaintiff refers to each and every allegations set forth in its General Allegations paragraphs 1-29, Inclusive as if set forth in full herein.

31.     Industries failed to make the monthly payments due on Loan 1 for the months of October, 2024, and each month thereafter. In addition, Industries failed to make the payments due on Loan2, Loan 3, and Loan 4 as well whether directly liable or liable on its Guaranties. Demand was made on Industries to pay all sums due but Industries failed to do so. Attached hereto, marked Exhibit "14" and incorporated herein by this reference is a demand letter directed to Industries to pay Loan 1 in full.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

32.     Industries failed to pay the sums due and the sum of $283,769.35 is due and payable as of October 23, 2024, and interest continues to accrue thereafter at the rate of 15.9% as a result of the default in an amount according to proof.

33.     In addition to the foregoing, Plaintiff is entitled to its reasonable attorneys fees and costs of suit incurred herein in an amount according to proof.

## SECOND CLAIM

**(For Breach of Guaranties as against Daniel Lee, Chou Yi Chao, Triple J. Laundromat, LLC, and Sparkle Clean Laundromat, LLC regarding payment of Loan 1)**

34.     Plaintiff incorporates each and every allegation set forth in Paragraphs 1-33, Inclusive of its General Allegations and First Claim and incorporates the same herein by reference as if set forth in full.

35.     As set forth above, Note 1 is in default as a result of the failure to pay the sums due in the Claim. Demand was made on Industries, and then on  Daniel Lee, Chao, Laundromat, and Sparkle Clean to pay all sums due as a result of the execution of the Guaranties set forth above but they failed and refused to do so. Therefore the sum of $283,769.35 is all due and payable as of October 23, 2024, together with interest thereon at the rate of 15.9% from and after October 23, 2024, in an amount according to proof.

36.     Pursuant to the terms of the Guaranties, and each of them, Plaintiff is entitled to its reasonable attorneys fees and costs of suit incurred herein in an amount according to proof.

## THIRD CLAIM

**(For Breach of Loan 2, Secured Promissory Note and Agreement #13337 As against Sparkle Clean Laundromat, LLC)**

37.     Plaintiff refers to each and every allegation set forth in Paragraphs 1-29 of the General Allegations, 30-33 of the First Claim and 34-36 of the Second Claim and incorporates the allegations by reference as if set forth in full.

38.     Sparkle Clean has failed to make the monthly payments due on Loan 2 for the months of October, 2024, and each month thereafter.  Sparkle Clean has also defaulted on its Guaranty obligations of Loans 1, 3 and 4 as set forth herein. As a result of the default on the loans

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

and in particular Loan 2, demand was made on Sparkle Clean to pay the sum of $688,906.04 which was the sum due on October 23, 2024, pursuant to the terms of the demand letter attached hereto, marked Exhibit "15" and incorporated herein by this reference. Sparkle Clean, Daniel Lee, Industries and Laundromat failed to pay the sums due and therefore the sum of $688,906.04 is due and payable together with interest thereon at the rate of 15.9% in an amount according to proof.

39. Pursuant to the terms of Note 2, Plaintiff is entitled to its reasonable attorney's fees and costs of suit incurred herein in an amount according to proof.

## FOURTH CLAIM

### (For Breach of Guaranties as against Daniel Lee, Triple J Industries, LLC, and Triple J. Laundromat, LLC of Loan 2, Note number 13337)

40. Plaintiff refers to paragraphs 1-40 Inclusive of the General Allegations, First Claim, Second Claim and Third Claim and incorporates them by reference as if set forth in full.

41. As set forth above, Daniel Lee, Industries and Laundromat, and each of them, guaranties all obligations due of Sparkle Clean. Demand was made on Sparkle Clean and also on Daniel Lee, Industries and Laundromat to pay all sums due on Loan 2 evidenced by Note 2 as modified but said Defendants, and each of them, failed and refused to do so. As a result, the sum of $688,906.04 is due and payable together with interest thereon in an amount according to proof is due and payable by Daniel Lee, Industries and Laundromat.

42. Pursuant to the terms of the Guaranties, Plaintiff is entitled to its reasonable attorneys fees and costs of suit incurred herein.

## FIFTH CLAIM

### (For Breach of Secured Promissory Note and Agreement, Note 3, Loan number 12958 as Against Triple J Laundromat, LLC)

43. Plaintiff refers to each and every allegations set forth in Paragraphs 1-42, Inclusive of the General Allegations, the First Claim, the Second Claim, the Third Claim, and the Fourth Claim by reference as if set forth in full.

44. As set forth above Laundromat entered into Note 3, Loan Number 12958 with Plaintiff. Laundromat has failed to make the monthly payments pursuant to the terms of Note 3 for

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1    the months of December, 2024, and each month thereafter. Demand was made on Laundromat to

2    make the payments due on Note 3 and the other loans set forth herein, Loan 1, Loan 2 and Loan 4

3    but it has failed to make the payments. As a result of the foregoing, Loan 3 was in default and

4    attached hereto, marked Exhibit "16" and incorporated herein by this reference is the demand

5    letter sent to Laundromat the pay the sums due on Loan 3. Laundromat and the guarantors have

6    failed and refused to do so. As a result as of October 23, 2024, the sum of $57,192.88 is due and

7    payable from Laundromat together with interest at the rate of 15.9% in an amount according to

8    proof.

9        45.    Pursuant to the terms of Note 3, Plaintiff is entitled to its reasonable attorneys fees

10   and costs of suit incurred herein in an amount according to proof.

11   <u>**SIXTH CLAIM**</u>

12   **(For Breach of Guaranty of Note 3, Loan number 12958 as against Daniel Lee, Chou Yi**

13   **Chao, Sparkle Clean Laundromat, LLC, and Triple J Industries)**

14       46.    Plaintiff refers to each and every allegations set forth in Paragraphs 1-45, Inclusive,

15   in its First, Second, Third, Fourth, and Fifth Claims by reference as if set forth in full.

16       47.    As set forth above, Laundromat entered into Loan 3 by the execution of Note 3.

17   L:aundromat is in default of Loan 3 and Note 3. In addition, all of the Defendants herein have

18   breached Note 1, Note 2, and Note 4 and the Guaranties thereof as set forth in this Complaint. As

19   a result of the failure of Defendants, and each of them, to pay the sums due on Loan 3 evidenced

20   by Note, Daniel Lee, Chao, Sparkle \Clean and Industries are obligated to pay Plaintiff the sum of

21   $57,192.88 together with interest thereon at the 15.9% from and after October 23, 2024, in an

22   amount according to proof.

23       48.    Pursuant to the terms of the Guaranties Plaintiff is entitled to its reasonable

24   attorneys fees and costs of suit incurred herein in an amount according to proof.

25   <u>**SEVENTH CLAIM**</u>

26   **(For Breach of Secured Promissory Note and Agreement number 12624, Note 4 as against**

27   **Triple J Industries, LLC)**

28       49.    Plaintiff incorporates the allegations set forth in Paragraphs 1-48 Inclusive of the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1  General Allegations, the First Claim, Second Claim, Third Claim, Fourth Claim, Fifth Claim and

2  Sixth Claims by reference as if set forth in full herein.

3       50.     As set forth above, Plaintiff made a loan to Industries in the sum of $311,386.00

4  which is Loan Number 12624 as set forth above as Loan 4 pursuant to the terms of Note 4.

5  Monthly payments have not been made as agreed for the months of September, 2024, and each

6  month thereafter. In addition, Defendants, and each of them, have defaulted on Loan 1, Loan 2 and

7  Loan 3 evidenced by Note 1, Note 2, and Note 3 above. As a result demand was made on

8  Defendants, and each of them, to pay all sums due but they failed and refused to do so. Attached

9  hereto, marked Exhibit "17" and incorporated herein by this reference is the demand letter sent to

10 Defendants, and each of them.  As a result, the entire sum of Loan 4 is due and payable in the sum

11 of $55,657.34 as of October 23, 2024, and interest will continue to accrue on that sum at the rate

12 of 15.9 % in an amount according to proof.

13      51.     Pursuant to the terms of Note 4, Plaintiff is entitled to its reasonable attorneys fees

14 and costs of suit incurred herein in an amount according to proof.

## EIGHTH CLAIM

### (For Breach of Guaranties against Triple J Laundromat, LLC, Sparkle Clean Laundromat, LLC, Daniel Lee, and Chou Yi Chao)

18      52.     Plaintiff refers to each and every allegation set forth in Paragraphs 1-51 Inclusive

19 of its General Allegations, First Claim, Second Claim, Third Claim, Fourth Claim, Fifth Claim,

20 Sixth Claim, and Seventh Claim and incorporates them by reference as if set forth in full.

21      53.     As set forth above, Laundromat, Sparkle Clean, Daniel Lee and Chao, and each of

22 them, has guaranties the obligations of Industries pursuant to the terms of the Guaranties set forth

23 herein. Demand has been made on Defendants, and each of them, to pay all sums due but they

24 failed and refused to do so. As a result the sum of $55,657.34 is due and payable by Defendants,

25 and each of them, to Plaintiff together with interest thereon in an amount according to proof.

26      54.     Pursuant to the terms of the Guaranties Plaintiff is entitled to its reasonable

27 attorney's fees and costs in an amount according to proof.

## NINTH CLAIM

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**(For Claim and Delivery of Personal Property as against All defendants)**

55.     Plaintiff refers to each and every allegation set forth in Paragraphs 1-54, Inclusive above in the General allegations and in each Claim set forth herein by reference as if set forth in full.

56.     As set forth above. As collateral for Loan 1, Loan 2, Loan 3 and Loan 4 ("the Loans"), Defendants, and each of them pledged as collateral certain cash collateral, the Note 1 Equipment, Note 3 Equipment and Note 4 Equipment along with the Laundromat Blanket Lien Collateral, the Industries Blanket Lien Collateral, and the Sparkle Clean Blanket Lien Collateral (all of which is collectively "the Collateral").

57.     As a result of the default on Loan 1, Loan 2, Loan 3, and Loan 4 (collectively "the Loans") demand was made on Defendants, and each of them to turn over possession of the Collateral but they failed and refused to do so except that Plaintiff has possession of the cash collateral. As a result of the failure and refusal of defendants, and each of them to turn over possession of the Collateral except for the cash collateral, Plaintiff is entitled to a Judgment for Claim and Delivery with respect to the Collateral and a Judgment for possession of the Collateral.

## TENTH CLAIM

### (For Conversion against all Defendants)

58.     Plaintiff refers to each and every allegation set forth in Paragraphs 1-57, Inclusive, above set forth in the General Allegations and in the First-Ninth Claims and incorporates them be reference as if set forth in full.

59.     As a result of the events of default by Defendants, and each of them, they do not have the right to use and possess the Collateral and demand has been made on Defendants, and each of them to turn over possession of the Collateral but they have failed and refused to do so (except that Plaintiff has possession of the cash collateral).

60.     Plaintiff is not a volunteer in allowing Defendants, or any of them to keep and retain possession of the Collateral or use and depreciate it.

61.     Defendants are interfering with Plaintiff's right to possession of the Collateral. As a result Plaintiff is not only entitled to possession of the Collateral and a Judgment for Claim and

1   Delivery but is also entitled to damages for the fair market value of the collateral from and after

2   the date of default on the Loans together with interest thereon in an amount according to proof.

3   Plaintiff is informed and believes and thereon alleges that if the equipment which is part of the

4   Collateral is in good condition normal wear and tear excepted on an orderly liquidation basis

5   would have the following values: (a) the Industries equipment that is part of the Collateral would

6   have a value of $55,500.00; (b) the Laundromat equipment that is part of the Collateral would

7   have a value of $60,000.00; and (c ) the Sparkle Clean Equipment that is part of the Collateral

8   would have a value of $275,000.00. Plaintiff does not what other Collateral exists at this time and

9   will conform the amount proof as to the value of all such Collateral. The value of the Collateral is

10  due together with interest thereon from and after the date of default on each loan at the legal rate is

11  also due and payable in an amount according to proof.

12       62.    Plaintiff is also entitled to payment of all costs incurred by Plaintiff in seeking the

13  return of the Collateral in an amount according to proof.

14       63.    To the extent allowed by law, Plaintiff is entitled to its reasonable attorney's fees

15  and costs incurred herein in an amount according to proof.

16       WHEREFORE, Plaintiff prays judgment as follows:

17  **ON THE FIRST AND SECOND CLAIMS**

18       1.    For the principal sum of $283,769.35 as of October 23, 2024, inclusive of accrued

19  interest, late fees and other amounts due and owing

20       2.    For further interest, late fees and other charges as they continue to accrue in an

21  amount according to proof;

22       3.    For reasonable attorney's fees incurred in an amount according to proof;

23  **ON THE THIRD AND FOURTH CLAIMS**

24       4.     For the principal sum of $688,906.04 as of October 23, 2024, inclusive of accrued

25  interest, late fees and other amounts due and owing

26       5.    For further interest, late fees and other charges as they continue to accrue in an

27  amount according to proof;

28       6.    For reasonable attorney's fees incurred in an amount according to proof;

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**ON THE FIFTH AND SIXTH CLAIMS**

7.      For the principal sum of $57,192.88 as of October 23, 2024, inclusive of accrued interest, late fees and other amounts due and owing

8.      For further interest, late fees and other charges as they continue to accrue in an amount according to proof;

9.      For reasonable attorney's fees incurred in an amount according to proof;

**ON THE SEVENTH AND EIGHTH CLAIMS**

10.     For the principal sum of $55,657.34 as of October 23, 2024, inclusive of accrued interest, late fees and other amounts due and owing

11.     For further interest, late fees and other charges as they continue to accrue in an amount according to proof;

12.     For reasonable attorney's fees incurred in an amount according to proof;

**ON THE NINTH CLAIM**

13.     For Judgment of Claim and Delivery with respect to the Collateral as defined in the Complaint;

14.     For Judgment for immediate possession of the Collateral as defined in the Complaint;

**ON THE TENTH CLAIM**

15.     For damages for the fair market value of the Collateral as defined in the Complaint in the approximate sum of $390,575.00 for the equipment which is part of the Collateral together with any remaining items of Collateral all in an amount according to proof;

16.     For interest on the value of the Collateral as defined in the Complaint from and after the date of default on each loan in an amount according to proof

17.     For damages for all costs incurred in seeking the possession of the Collateral as defined in the Complaint in amount according to proof

**ON ALL CLAIMS**

18.     For costs of suit incurred herein; and

Frandzel Robins Bloom & Csato, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
(323) 852-1000

1

2

3

4          19.       For such other and further relief as the Court deems just and proper.

5

6    DATED:  January 25, 2025              FRANDZEL ROBINS BLOOM & CSATO, L.C.

7

8                                    By:  _____

9                                         ANDREW K. ALPER
                                         Attorneys for Plaintiff Eastern Funding, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

# EXHIBIT 1



**California Secretary of State**
Electronic Filing

## LLC Termination – Certificate of Cancellation

| | |
|---|---|
| Entity Name: | SPARKLE CLEAN LAUNDROMAT LLC |

| | |
|---|---|
| Entity (File) Number: | 201421210278 |
| File Date: | 08/24/2020 |

Detailed Filing Information

**Dissolution**
The Dissolution was made by a vote of ALL of the members of the California Limited Liability Company.

**Tax Liability Statement**
All final returns required pursuant to the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

**Cancellation Statement**
Upon the effective date of this Certificate of Cancellation, the Limited Liability Company's registration is cancelled and its powers, rights and privileges will cease in California.

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

**Electronic Signature(s):**

DANIEL LEE

# EXHIBIT 2

 
BA20241060877



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20241060877 |
| Date Filed: 6/1/2024 |

| Entity Details | |
| --- | --- |
| Limited Liability Company Name | SPARKLE CLEAN LAUNDROMAT LLC |
| Entity No. | 202252415749 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of LLC | |
| --- | --- |
| Principal Address | 18605 ARGUELLO AVE<br>MORGAN HILL, CA 95037 |

| Mailing Address of LLC | |
| --- | --- |
| Mailing Address | 18605 ARGUELLO AVE<br>MORGAN HILL, CA 95037 |
| Attention | |

| Street Address of California Office of LLC | |
| --- | --- |
| Street Address of California Office | None |

| Manager(s) or Member(s) | |
| --- | --- |
| Manager or Member Name | Manager or Member Address |
| shashi sharma | 18605 ARGUELLO AVE<br>MORGAN HILL, AZ 95037 |
| bachittar singh | 2371 ROBERT GABRIEL DR<br>TRACY, CA 95377 |
| CHAMKOR SINGH | 2371 ROBERT GABRIEL DR<br>TRACY, CA 95377 |

| Agent for Service of Process | |
| --- | --- |
| Agent Name | SHASHI SHARMA |
| Agent Address | 18605 ARGUELLO AVE<br>MORGAN HILL, CA 95037 |

| Type of Business | |
| --- | --- |
| Type of Business | LAUNDROMAT |

| Email Notifications | |
| --- | --- |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

| Chief Executive Officer (CEO) | |
| --- | --- |
| CEO Name | CEO Address |
| SHASHI SHARMA | 18605 ARGUELLO AVE<br>MORGAN HILL, CA 95037 |

| Labor Judgment |
| --- |
| No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code. |

# EXHIBIT 3

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

| **$321,733.20** | **SECURED PROMISSORY NOTE and AGREEMENT** | |
|---|---|---|
| Place of Execution: New York, NY | (this "Note" or the "Note") | Date: 08/07/2020 |

**FOR VALUE RECEIVED**, TRIPLE J INDUSTRIES LLC ("Maker"),  with a principal place of business at 1464 18th Ave, San Francisco, CA  94122-3409, a notice address at 1464 18th Ave, San Francisco, CA 94122-3409 and also doing business at 517 Ofarrell St, San Francisco, CA 94102-1931 (the "Premises"), promises to pay to the order of **Eastern Funding LLC** ("Lender"), at **213 West 35th Street, New York, NY 10001** or at such other place as may be designated in writing by the then holder (the "Holder") of this Note, the principal sum of $321,733.20 with interest thereon computed on the basis of a 360 day year from the date of funding at an initial annual rate of 6.25%, but if the published Prime Rate of interest on the date of funding is greater than the published Prime Rate of interest on the date hereto (Prime rate equals 3.25% as of 08/07/2020), such increase shall be added to the aforementioned annual rate and the payments detailed below will be adjusted accordingly. This Note must be paid in 117 consecutive monthly installments, the first 3 of which will be interest only each in the amount of $1,702.01, followed by 114 self-amortizing payments of principal and interest commencing and due and payable on *  January 1 , 20 21  (this date shall be 4 months after the date of funding) and on the *  1  day of each and every month thereafter (if this date is the 29th or the 30th, the February payment shall be due on the last day of February), to and including *  September 1 , 20 30  (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 7 through 60, each monthly payment of principal and interest shall be $3,808.52. On the due date of installment payment number 60, *  September 1 , 20 25 , the annual interest rate will adjust to Prime plus 3.00%, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61 , but under no circumstances will the annual interest rate ever be less than 6.25% ("Rate Floor").  Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate. The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers. If Prime remains at the same rate that it is on the date hereof through the billing date of monthly installment number 61, all remaining consecutive monthly installments, starting with monthly installment number 61, shall each be $3,808.52. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion. No Note funding shall occur before the Collateral (defined below) is delivered to and installed at the Premises.

    * Lender is hereby authorized by Maker to insert the applicable dates.

**(1)** If any payment or other amount due hereunder is not made within 10 days from its due date, a late charge of 5% of each payment so overdue, may be charged by the Holder to defray the expenses incident to processing such payment.  The Maker may not prepay any outstanding principal sum in excess of that required to pay the next scheduled installment of principal and interest during the first 12 months of the interest only or principal and interest term, whichever comes first (the "Non-Prepay Period"), thereafter this Note is prepayable at any time, without fee.  If, during the Non-Prepay Period: (i) there is a prepayment of all or any part of the interest only or principal or interest, or; (ii) if Maker defaults in the performance of Maker's obligations hereunder, then to compensate Lender for lost interest and/or principal, Maker shall pay to Holder, in addition to any unpaid principal, finance charges, and other charges then due and owing, a prepayment fee equal to two monthly installments plus 100% of the interest Lender would have earned during the Non-Prepay Period less all of the interest actually paid by Maker during the Non-Prepay Period.  Such prepayment fee shall be in addition to any unpaid principal, finance charges, and other charges then due and owing.

**(2)** In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Holder shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above. If on two occasions, within any 12 month period, Maker's checks and/or Maker's authorized, automatic payments to Holder are not honored when presented in due course to the bank on which they are drawn, Holder shall be permitted to: (A) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (B) increase the annual interest rate then being charged by 0.5%; and/or, (C) refuse to honor any contractual provisions herein that would, at some point in the future, reduce the annual interest rate. In addition to the 0.5% detailed in subparagraph (2)(B) above, if Maker withdraws Maker's authorization for Holder to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Holder shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(3)** In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due or to become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker: (A) hereby grants to Lender and Lender hereby accepts, a purchase money security interest in the equipment and assets detailed on Schedule "A" attached, and all proceeds and products therefrom (hereinafter the "Collateral"), but the grant of this purchase money security interest does not, in any way, invalidate or reduce the effectiveness of any existing security interests, first or otherwise, given by Maker to Lender; and, (B) must give **$0.00** cash collateral (the "Cash Collateral") to Lender before the Note is funded. Maker hereby authorizes Lender to file such financing statements or amendments thereto as Lender deems to be necessary to perfect Lender's security interest in the Collateral. The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (a "Guarantor") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Maker's possession shall be non-interest bearing and will be commingled with Maker's general funds. Holder may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Holder.

**(4)** Any of the following occurrences shall constitute a default under this Note: (A) The non-payment when due of any installment required to be made hereunder, and such default continues until the earlier of: (i) 5 days after written notice; or, (ii) 10 days; and/or (B) failure to perform any requirement of this Note or of any other agreement delivered by Maker to Holder; and/or (C) Failure to restore any Cash Collateral applied by Holder within 5 days after written notice; and/or (D) If the Collateral is subject to levy or execution or other judicial process, and the same is not removed or bonded within 10 days after any lien is placed thereon; (E) If the interest of Maker and/or Maker's principals in the Premises shall pass from Maker and/or Maker's principals, voluntarily or involuntarily; and/or (F) If the Premises or the improvements therein or thereto shall be substantially damaged in any manner; (G) If any of the representations and/or warranties detailed in paragraph (6) below turn out not to be true; (H) If Maker and/or any Guarantor fails to either comply with or abide by the Affirmative and Negative Covenants detailed below in paragraphs (7) and (8), respectively; and/or (I) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Holder; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings; (iv) appointment of a receiver or an assignment for the benefit of creditors; (iv) making or sending a notice of an intended bulk sale; (v) the whole or partial suspension or liquidation of either of their usual business; (vi) failure to pay any tax when due; (vii) having made or making any misrepresentation to the Lender or Holder for the purpose of obtaining credit or an extension of credit; and, (ix) default with respect to the payment of money owed to Holder or any third person or entity pursuant to any agreement, lease (including but not limited to the real estate lease for Maker's principal place of business (the "Lease")) or other instrument beyond any period of grace provided therein, or default in the performance of any other term, condition or covenant contained in any document under which such obligation is created; and/or (J) Holder's reasonable and written determination, made in good faith, that the prospect of payment or other performance by Maker is materially impaired.

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

**(5)** In the event of the occurrence of any default hereunder and written notice thereof, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently and: (A) at the option of Holder, all past, present and future payments required by this Note shall immediately become due and payable; (B) Maker and all Guarantors will jointly and severally pay to Holder such further amount as shall be sufficient to cover the cost and expense of enforcing this Note, including but not limited to: reasonable compensation to the attorneys of Holder which are hereby deemed to be 15% of the then balance due and owing on this Note, but in no event less than $1,000.00 nor more than that permitted under applicable law; costs and expenses directly or indirectly related to the Collateral (i.e., costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral); (C) Maker will, at request of Holder, properly crate and ship the Collateral, at all Maker's sole cost and expense, to any place within the Continental United States designated by Holder; (D) Holder may, at its sole and exclusive option, perform for Maker, any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note; (E) Holder shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Holder will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the Maker's notice address at least 7 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Holder and/or its representative may purchase all or part of the Collateral at a public or private sale; (F) at the option of Holder, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Holder receives payment in full; (G) Holder shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter the Premises peaceably by Holder's own means, breaking locks when necessary, or with legal process, in which case Maker agrees not to resist or interfere, and: (i) render the Collateral unusable without permanently diminishing the Collateral's value; and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner, protection, and/or removal; and/or (iii) designate an interim agent (the "Interim Tenant") to operate the Premises (if an Interim Tenant is so designated, pay Landlord all current rent and abide by all conditions of the Lease during the time it occupies the Premises and, during this time, Lender shall diligently attempt to locate a Replacement Tenant - see the following subsection for a definition of the term, "Replacement Tenant"); and/or (iv) appoint any other person or concern (the "Replacement Tenant") to take over and operate the Collateral in the Premises, in which case Maker, at Lender's option, shall be deemed to have assigned, with full recourse, the unexpired term of the Lease, including any option or renewal periods, to said Replacement Tenant, provided the Replacement Tenant agrees, in writing, to comply with terms and conditions identical to all of those in the Lease (hereinafter referred to as the "New Lease"), however no past due rentals shall be the obligations of the Replacement Tenant and Maker shall nevertheless remain liable to the Landlord for the prompt payment of all of the rentals and the performance of all of the provisions of both its Lease and the New Lease, and, to the extent that Lender pays any money to Landlord (i.e., rent or past due rent, assignment fee, administrative charge, etc.) to effectuate the Replacement Tenant's occupancy of the Premises, Maker shall reimburse Lender, within seven days of Lender's demand therefore, for any amount so paid to the Landlord by Lender and, to the extent any such sums are not so reimbursed by Maker to Lender, they shall be chargeable with interest computed at 15.9% per annum and added to the then balance due hereunder; and, (H) this Agreement shall constitute an irrevocable power of attorney from Maker to Lender authorizing Lender to assign the Lease, but Maker understands and agrees that Lender shall not, in any way, be liable for the failure of the Interim Tenant or the Replacement Tenant to pay rent to Landlord.

**(6)** To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: (A) Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; (B) Maker either owns the Premises or has a valid Lease therefor with the owner of the building in which the Premises are located. If the Premises are leased to Maker and the Lease is scheduled to expire prior to the payment in full of the Note, Maker must prove to Lender: (i) before Lender funds any portion of the Note, that Maker has the right to extend the term of the Lease to a date that is after the Note's maturity date and such right can be exercised at least 120 days prior to the Lease's scheduled termination; and, (ii) at least 90 days prior to the scheduled termination date of the Lease, that the Lease has been extended to a date that is after the Note's maturity date; (C) they have the power to execute this Note and deliver same to Lender; (D) The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party; (E) There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors; (F) Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; (G) they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; (H) Maker, to the best of its knowledge, is not in breach of, in default under, or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; and, (I) Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business.

**(7)** So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Holder such evidence of compliance as may be requested by Holder, to wit: (A) Maker will substantially and timely comply at all times with all its obligations associated with Maker's business at the Premises; (B) Maker agrees not to, without first obtaining the written consent of Holder: (i) cancel, surrender, modify, alter or assign the Lease, or sublet all or any part of the Premises; or, (ii) permit the cancellation, modification, alteration or assignment of the Lease, or the sublet of all or any part of the Premises; (C) Keep accurate and complete books and records and maintain same; (D) If requested by Holder, Maker shall forward to Holder or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end; (E) Maker will at all reasonable times permit the Holder to visit the Premises to inspect the Collateral, the Premises and Maker's books of account; (F) Obtain insurance policies for comprehensive property and fire insurance with extended coverage from an insurance company licensed to do business in the state where the Premises are located that has a minimum A.M. Best's rating of B+ or better, naming Holder as mortgagee and loss payee in an amount not less than the then current outstanding balance of this Note, covering the Premises and the Collateral; (G) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note; (H) Notify Holder of litigation involving amounts of $50,000.00 or more to which Maker and/or any Guarantor is a party by mailing to Holder, attention: President, by certified mail within five days of receipt thereof, a copy of the complaint, motion for judgment, or other such pleadings served on or by Maker or any Guarantor; (I) Maker will keep the Collateral, the Premises and other equipment and machinery therein in good repair, working order and condition, and will make all needful and proper repairs, renewals, replacements, additions and improvements thereto; (J) Maker will substantially and timely comply at all times with other agreements to which Maker is a party; (K) Maker will promptly pay and discharge, or cause to be paid and discharged, when due any and all income taxes, federal or otherwise, lawfully assessed and imposed upon Maker, and any and all lawful taxes, levies and assessments whatsoever upon Maker's property and every part thereof, provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such income taxes, federal or otherwise or such other taxes, rates, levies or assessments; (L) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral; (M) Allow Holder the right, without any Holder obligation, to make

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

any or all payments to creditors (including but not limited to the Landlord of the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Holder's rights and Holder's security interest(s) and/or mortgages in the Collateral and Maker hereby authorizes Holder, at Maker's sole option, to contest any or all of such obligations of Maker and to collect 100% of any refunds or rebates arising from such contest(s); (N) Permit Holder to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Holder's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith; (O) Maker will strictly comply with requirements of any City, State, or Federal Law relating to the storage or use of hazardous materials; (P) Allow Holder the right, without any Holder obligation, to cure any failure to comply with any applicable Hazardous Waste Law; (Q) Maker will hold and save Holder free and harmless against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Holder due to Maker's and/or any Guarantor's default under this Agreement; and, (R) Maker will hold and save Holder free and harmless from any causes of action, claims, damages and liabilities of a contractual or tax nature due to the acts of Maker, and to provide counsel, at Maker's own expense, to defend Holder against any such claim.

**(8)** Except with the prior written consent of Holder: (A) Maker and the Guarantor(s) will not make any material change in organization or management or the manner in which Maker's business is conducted; (B) Maker will not become party to any merger or consolidation with any company or entity of any kind whatsoever, or sell substantially all of its assets, liquidate or dispose of its business; (C) Maker will not become a guarantor of obligations of any other person, firm, or entity; (D) Maker and the Guarantor(s) will not transfer, sell, lease or in any other manner convey any equitable, beneficial or legal interest in any of the Collateral to any person or other entity; (E) Maker and the Guarantor(s) will keep the Collateral at the Premises; (F) Maker will not create any new indebtedness, nor assume or guarantee or become or remain liable, directly or indirectly except in the normal course of Maker's business; (G) Maker and the Guarantor(s) will not create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral; (H) Maker will not borrow money in excess of $50,000.00 (the aforesaid restriction is in total, not per lender, but shall not apply to routine trade accounts payable incurred to obtain merchandise, inventory, parts, supplies or services obtained on open account); (I) Maker shall not make, create, incur or suffer or permit to be created or incurred or continue in existence any mortgage, pledge, lien, charge or other encumbrance or security interest of any kind upon or in any of Maker's property or assets now owned or hereafter acquired; (J) Maker and the Guarantor(s) will not permit any judgment obtained against Maker or the Guarantor(s) in an amount exceeding $24,999.99 to remain unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and, (K) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise.

**(9)** All parties to this Note and the following Irrevocable Guaranty: (A) expressly waive, to the extent permitted by law: presentment for payment; notice of dishonor; protest; notice of protest of this Note or the following Irrevocable Guaranty; other notice of any kind and all demands whatsoever; and, (B) agree not to make any claim against one another for any consequential damages.

**(10)** The Holder shall not by any act of delay, commission, failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Holder, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Holder of any right or remedy under the terms of this Note or the following Irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Holder would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Holder, and no course of dealing between Maker and/or Guarantors and Holder shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Holder. No notice to or demand on Maker or any Guarantor in any case shall entitle Maker or any such Guarantor to any other or further notice or demand in the same, similar other circumstances.

**(11)** Notwithstanding any provisions of this Note to the contrary: (A) the maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits, such excess payment shall be automatically credited to principal as a permitted partial prepayment without any prepayment fee being due with respect thereto; (B) any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law shall be void and deemed deleted therefrom without invalidating any other provision thereof; and, (C) time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below.

**(12)** This Note, the following Irrevocable Guaranty, and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Holder, whether or not arising out of or relating to this Note: (A) all parties to this Note and the following Irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches, and any set-off, counterclaim or cross-claim of any nature or description, other than actual payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender or Holder would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender or Holder in a separate action, such set-off, counterclaim or cross-claim may be interposed in any action brought by Lender or Holder); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, and/or Nassau, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter.

**(13)** Words used in this Note and the following Irrevocable Guaranty: (A) as singular shall be construed to mean the plural where necessary; and, (B) as plural shall be construed to mean the singular where necessary. The necessary grammatical changes required to make the provisions of this Note apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed. In the event that any word, sentence, paragraph or article of this Note is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted. The Uniform Commercial Code shall govern the rights, duties and remedies of the parties hereto.

**(14)** Maker agrees to pay all expenses incurred in connection with this Note including all title insurance premiums, appraisal costs, and recording charges. Maker further agrees to pay a non-refundable documentation fee to Lender in the amount of $495.00 and a $150.00 Disposition charge at loan expiration, termination or default as reimbursement for all of Lender's expenses associated with the release and/or transfer of liens against the Collateral (but not the recording of such releases) and, where applicable, transfer of title to the Collateral.  The Lender and/or Holder may negotiate, assign and transfer this Agreement and any other document executed in connection herewith, and may deliver all or any part of any collateral security held in connection herewith to any transferee, who shall assume Lender's obligations hereunder and the Lender shall thereafter be forever released and discharged of and from any and all liability or responsibility to Maker respecting all liability or responsibility to them under this Agreement, and for and on account of any Collateral so delivered.

THIS IS A COPY
This Authoritative Copy of the record is held at na2.docusign.net

Maker may not transfer or assign this Note. Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same. By signing this Note and/or the Irrevocable Guaranty below, the undersigned, who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account. All terms and provisions of this Note shall be binding upon and shall inure to the benefit of, and be enforceable by the parties hereto, their respective legal representatives, successors and assigns. To the extent that any communications and notices are required by this Note, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other. Each of the parties hereto represents that the other parties, their agents, servants or employee have made no representation or statement whether oral or in writing, relating to or concerning this Note other than specifically set forth herein. This Note and the following Irrevocable Guaranty: (C) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (D) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is 6467236313.

**(15)** The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to either order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. LENDER MAKES NO WARRANTY OF TITLE TO ANY SOFTWARE, SOFTWARE LICENSES AND/OR THE RIGHT TO USE ANY SOFTWARE. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and manufacturer for a description of any such rights.

**Maker:** TRIPLE J INDUSTRIES LLC

by _(signed)_
Daniel Lee, Member

**Lender:** Eastern Funding LLC

by _(signed)_
Ana Lage          Documentation Manager AVP
Print Name and Title

**IRREVOCABLE GUARANTY**: Unless otherwise defined, words used herein shall have the same meaning as in the above Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby: (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise, whether arising by virtue of the Note or otherwise; (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender; (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker; and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of the Note and this Irrevocable Guaranty. The provisions hereof may not be changed orally, but only by a writing signed by Lender. The undersigned Guarantor(s) represent and warrant to Lender that: (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and, (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

_(signed)_
Daniel Lee
Notice Address: 1464 18th Ave, San Francisco CA 94122-3409

_(signed)_
Chou Yi Chao
Notice Address: 1464 18th Ave, San Francisco CA 94122-3409

50%
My Ownership
Percentage of Maker

50%
My Ownership
Percentage of Maker

SCHEDULE "A" to

**$321,733.20 SECURED PROMISSORY NOTE AND AGREEMENT**
**Maker: TRIPLE J INDUSTRIES LLC          Lender: Eastern Funding LLC**

**$321,733.20 of the $321,733.20 loan proceeds is being used for Maker's purchase of the following equipment:**

| Qty | Description |
|---|---|
| 1 | Electrolux stack gas dryer |
| 1 | Electrolux 45lb washer |
| 5 | Electrolux 30lb washer |
| 7 | Electrolux Coin Boxes |
| 57 | F2 Readers |
| 1 | SAP |
| 1 | FC Hosting |
| 1 | Management Cards |
| 79 | F2 Readers |
| 2 | SAP |
| 1 | FC Hosting |
| 1 | Management Cards |
| 6 | Kiosk |
| 25 | F2 Readers |
| 1 | SAP |
| 1 | Management Cards |

Plus all accessions, additions and replacements thereto and all proceeds therefrom.

**Maker: TRIPLE J INDUSTRIES LLC** by _____
Daniel Lee, Member

**Lender: Eastern Funding LLC** by _____
Ana Lage
Print Name and Title: _____ Ana Lage     Documentation Manager AVP

# EXHIBIT 4

■■■■■■
■■■■■■
■■■■■■

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 | |
| B. E-MAIL CONTACT AT FILER (optional)<br>uccfilingreturn@wolterskluwer.com | |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)  11255 - EASTERN<br><br>Lien Solutions     76553571<br><br>P.O. Box 29071     CALI<br>Glendale, CA 91209-9071<br><br>File with: Secretary of State, CA | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TRIPLE J INDUSTRIES LLC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1464 18th Ave | San Francisco | CA | 94122 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TRIPLE J INDUSTRIES LLC | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 517 Ofarrell St | San Francisco | CA | 94102 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Eastern Funding LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 213 West 35th Street, Suite 1000 | New York | NY | 10001 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
As collateral securing all present and future obligations of Debtor to Secured Party, Debtor hereby grants to Secured Party a security interest in the following, whether now owned or hereafter acquired and wherever located machinery, equipment, furniture, fixtures, inventories (raw materials, work-in-progress, finished goods and supplies), titled motor vehicles, leases, finished goods and supplies, contract rights, claims, causes of action, accounts receivable, any and all tangible and intangible assets and other real and/or personal property owned by Debtor and all cash and non-cash proceeds and products therefrom, none of which the debtor is authorized to sell, lease or otherwise dispose of without the written consent of secured party. This financing statement does not invalidate or reduce the effectiveness of any previously filed UCC financing statements having the same Secured Party and Debtor(s).

Notice - Debtor has also agreed not to further encumber the collateral described herein, the further encumbering of which may constitute the tortious interference with secured party's rights by such encumbrancer.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
76553571          XXX0469

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**     Prepared by Lien Solutions, P.O. Box 29071,<br>Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT 5

## AGREEMENT OF CROSS DEFAULT, COLLATERAL SECURITY, AND GUARANTY

This Agreement of Cross Default, Collateral Security, and Guaranty relates to any existing or future financing transaction (either a loan or an equipment lease) that is either in favor of, or that has been assigned to Eastern Funding LLC (hereinafter "Eastern") , whose notice address is 213 West 35th Street, 10th Floor, New York, NY 10001, wherein **TRIPLE J INDUSTRIES LLC, Sparkle Clean Laundromat LLC** and **TRIPLE J LAUNDROMAT LLC** are each either: (A) the Maker, Borrower or Debtor named in either a Promissory Note, a Secured Promissory Note and Agreement, a Loan and Security Agreement, a Loan Agreement and/or a Security Agreement (individually and collectively, a "Loan") that is either in favor of, or that has been assigned to Eastern; and/or, (B) the Lessee named in the equipment lease (an "Equipment Lease") that is either in favor of, or that has been assigned to Eastern.

For purposes of this Agreement, **TRIPLE J INDUSTRIES LLC, Sparkle Clean Laundromat LLC** and **TRIPLE J LAUNDROMAT LLC** shall each be referred to as a Primary Obligor and collectively they shall be referred to as Primary Obligors.

As used in this Agreement, the term "Obligations" refers to monetary or non-monetary obligations to Eastern that are detailed in a Loan and/or in an Equipment Lease.

**WHEREAS**, All of the Primary Obligors detailed herein are affiliated.

**AS ADDITIONAL SECURITY AND CONSIDERATION** to ensure that all of the Primary Obligors comply with their respective existing and future Obligations, IT IS HEREBY AGREED THAT:

**(1)** Any default by any Primary Obligor in the performance of its/his/her Obligations shall be deemed to be a default by ALL of the Primary Obligors in ALL of their respective Obligations;

**(2)** Each of the Primary Obligors hereby grant, to Eastern, a security interest in all of their now owned or hereinafter acquired: (a) contract rights, accounts receivable, and all other intangible assets and all proceeds and products therefrom; and, (b) machinery, equipment, furniture, fixtures, leasehold improvements, inventories (raw materials, work-in-progress, finished goods and supplies), titled motor vehicles, leases, finished goods, supplies and any other real and/or personal property arising of every kind and nature and any and all replacements, substitutions, additions and accessions thereto as well as all proceeds and products therefrom;

**(3)** Each of the Primary Obligors absolutely, unconditionally, irrevocably, jointly and severally guarantees ALL of the Obligations of ALL of the other Primary Obligors, however arising. The foregoing guaranty is a continuing guaranty and shall also extend to any Obligations which any Primary Obligor may incur to Eastern under any agreement or by reason of any other financial accommodation between Eastern and such Primary Obligor made after the date hereof whether or not presently contemplated;

**(4)** If and to the extent that Eastern actually receives a written Notice of Termination of Guaranty from a Primary Obligor, such termination shall only be applicable to Obligations having their inception after the date of Eastern's receipt of such termination notice and any and all Obligations that arose prior to the date of Eastern's receipt of a written Notice of Termination of Guaranty shall remain in full force and effect;

**(5)** Each of the Primary Obligors agrees that Eastern may, at its option: (a) proceed against one, some or all of the Primary Obligors upon any Loan and/or Equipment Lease default without proceeding against any other person or entity or the collateral, if any, securing such Loan or Equipment Lease (if resort is made to such collateral, all of the Primary Obligors hereby waive all notice in connection therewith and will pay on demand any deficiency resulting from the sale of such collateral); and/or (b) change any of the terms of any of the Loans and/or Equipment Leases as long as such changes are agreed to in writing by the respective Primary Obligor; and/or (c) alter, release or substitute any security for all or part of any Loan and/or Equipment Lease; and/or (d) compromise any right against any Primary Obligor or others; and/or (e) grant extensions of time; and/or (f) release, by operation of law or otherwise, any Primary Obligor, or others, without affecting the liability of any other Primary Obligor;

**(6)** Each of the Primary Obligors waives: (a) notice of acceptance of the guaranty detailed above; (b) notice of any default with respect to any Loan and/or Equipment Lease or any other obligations; (c) any and all rights to trial by jury in any action or proceeding based on any Loan and/or Equipment Lease and/or any other agreements, including but not limited to this Agreement; and, (d) presentment, demand for payment, protest and notice of protest with respect to any Loan and/or Equipment Lease and/or any other agreements, including but not limited to this Agreement;

**(7)** Each of the Primary Obligors further agree that: (a) their liability will continue in full force and effect until all Obligations have been fully discharged (for purposes of this Agreement and any of the above-referenced guarantees, a Primary Obligor's adjudicated bankruptcy shall not be deemed to be a discharge of its respective obligations to Eastern as regards any of its Loans and/or Equipment Leases); (b) they will pay all costs and expenses, including reasonable attorney fees, to enforce this Agreement; (c) all of the rights, remedies and recourse of Eastern under any Loans, Equipment Leases or any other agreements, including but not limited to this Agreement, are separate and cumulative and may be pursued separately, successively or concurrently, are non-exclusive and the exercise of any one or more of them, shall in no way limit or prejudice any other legal or equitable right, remedy or recourse to which Eastern may be entitled; (d) no failure, omission or delay on the part of Eastern in exercising any rights hereunder or in taking any action to collect or enforce payment or performance of any Loans, Equipment Leases or this Agreement or any other financial accommodation, either against any Primary Obligor or any other person liable therefore, shall operate as a waiver of any such right or shall, in any manner, prejudice the rights of Eastern against any Primary Obligor and/or that Primary Obligor's respective equity owners, if any, as are detailed below; (e) this Agreement binds each of the Primary Obligors, their respective equity owners, if any, as are detailed below, their heirs, administrators, representatives, successors or assigns and shall be governed by and construed under the laws of the New York State; (f) each of the Primary Obligors and their respective equity owners, if any, as are detailed below irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, and/or Nassau, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens and further agree that in any litigation between the any of the parties hereto proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (g) each of the Primary Obligors and

their respective equity owners, if any, as are detailed below waive: (i) any and all right to a trial by jury in any action or proceeding based hereon; and, (ii) waive benefit of any statute of limitations affecting their liability hereunder or the enforcement thereof; (h) other than as is detailed in any Loan, Equipment Lease and other obligations, this Agreement sets forth all of their obligations and no change to this Agreement will be effective unless it is in writing and signed by the party or parties intending to be bound thereby; and, (i) any provision of this Agreement which may be prohibited by applicable law shall be void and deemed deleted from this Agreement without invalidating any other provision hereof;

**(8)** Any and all present and future indebtedness and obligations of any of the respective Primary Obligors' equity owners as are detailed below to such Primary Obligor are hereby postponed until after the full payment and performance of all present and future obligations of the respective Primary Obligor to Eastern; and,

**(9)** This Agreement may be executed: (a) in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (b) by each party and forwarded to Eastern by email to documents@easternfunding.com and/or by facsimile transmission to (212) 819-9764, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act.

**AGREED TO AND ACCEPTED BY:**

**TRIPLE J INDUSTRIES LLC**, By: _____    August 13, 2020

Notice address: 1464 18th Ave,                                    Daniel Lee                              DATE
San Francisco, CA  94122-3409                                    Member

Equity Owner (PRINT): Daniel Lee        50%    Equity Owner (PRINT): Chou Yi Chao        50%
                                        My                                                My
_____  August 13, 2020   Ownership   _____  August 13, 2020   Ownership
Signature              Date                     Signature              Date

**Sparkle Clean Laundromat LLC**, By: _____    August 13, 2020

Notice address: 1464 18th Ave,                                    Daniel Lee                              DATE
San Francisco, CA 94122-3409                                      Member

Equity Owner (PRINT): Daniel Lee        50%    Equity Owner (PRINT): Chou Yi Chao        50 %
                                        My                                                My
_____  August 13, 2020   Ownership   _____  August 13, 2020   Ownership
Signature              Date                     Signature              Date

**TRIPLE J LAUNDROMAT LLC**, By: _____    August 13, 2020

Notice address: 14278 E 14th St Ste A,                           Daniel Lee                              DATE
San Leandro, CA 94578-2775                                        Member

Equity Owner (PRINT): Daniel Lee        50%    Equity Owner (PRINT): Chou Yi Chao        50%
                                        My                                                My
_____  August 13, 2020   Ownership   _____  August 13, 2020   Ownership
Signature              Date                     Signature              Date

# EXHIBIT 6

DocuSign Envelope ID: 37A67E4D-35E3-4838-AE84-580F8959BB2B

THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

| **$947,699.66** | **SECURED PROMISSORY NOTE AND AGREEMENT** | Date: 09/03/2019 |
|---|---|---|
| Place of Execution: New York, NY | (this "Note" or the "Note") | |

**FOR VALUE RECEIVED,** Sparkle Clean Laundromat LLC ("Maker"),  with a principal place of business at 1464 18th Ave, San Francisco, CA  94122-3409, a notice address at 1464 18th Ave, San Francisco, CA 94122-2312 and also doing business at 1100-B MacDonald Ave, Richmond, CA 94801-3116 (the "Premises"), promises to pay to the order of **Eastern Funding LLC** ("Lender"), at **213 West 35th Street, New York, NY 10001** or at such other place as may be designated in writing by the then holder (the "Holder") of this Note, the principal sum of $947,699.66 with interest thereon computed on the basis of a 360 day year from the date of funding at an initial annual rate of 8.25%, but if the published Prime Rate of interest on the date of funding is greater than the published Prime Rate of interest on the date hereto (Prime rate equals 5.25% as of 09/03/2019), such increase shall be added to the aforementioned annual rate and the payments detailed below will be adjusted accordingly. Principal and interest shall be paid in 108 self-amortizing, consecutive monthly installments commencing and due and payable on \* October 10 , 2019 (this date shall be one month after the date of funding) and on the \* 10 day of each and every month thereafter (if this date is the 29th or the 30th, the February payment shall be due on the last day of February), to and including \* September 10 , 20 28 (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 60, each monthly payment shall be $12,460.99. On the due date of installment payment number 60, \* September 10 , 20 24 , the annual interest rate will adjust to Prime plus 3.00%, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61, but under no circumstances will the annual interest rate ever be less than 8.25% ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate.  The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers.  If Prime remains at the same rate that it is on the date hereof, all remaining consecutive monthly installments, starting with installment payment 61 shall each be $12,460.99. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion. No Note funding shall occur before the Collateral (defined below) is delivered to and installed at the Premises.
\* Lender is hereby authorized by Maker to insert the applicable dates.

**(1)** If any payment or other amount due hereunder is not made within 10 days from its due date, a late charge of 5% of each payment so overdue, may be charged by the Holder to defray the expenses incident to processing such payment.  The Maker may not prepay any outstanding principal sum in excess of that required to pay the next scheduled installment of principal and interest during the first 12 months of the interest only or principal and interest term, whichever comes first (the "Non-Prepay Period"), thereafter this Note is prepayable at any time, without fee.  If, during the Non-Prepay Period: (i) there is a prepayment of all or any part of the interest only or principal or interest, or, (ii) if Maker defaults in the performance of Maker's obligations hereunder, then to compensate Lender for lost interest and/or principal, Maker shall pay to Holder, in addition to any unpaid principal, finance charges, and other charges then due and owing, a prepayment fee equal to two monthly installments plus 100% of the interest Lender would have earned during the Non-Prepay Period less all of the interest actually paid by Maker during the Non-Prepay Period.  Such prepayment fee shall be in addition to any unpaid principal, finance charges, and other charges then due and owing.

**(2)** In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Holder shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above. If on two occasions, within any 12 month period, Maker's checks and/or Maker's authorized, automatic payments to Holder are not honored when presented in due course to the bank on which they are drawn, Holder shall be permitted to: (A) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (B) increase the annual interest rate then being charged by 0.5%; and/or, (C) refuse to honor any contractual provisions herein that would, at some point in the future, reduce the annual interest rate. In addition to the 0.5% detailed in subparagraph (2)(B) above, if Maker withdraws Maker's authorization for Holder to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Holder shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(3)** In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due to or become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker: (A) hereby grants to Lender and Lender hereby accepts, a first security interest in all of Maker's wherever located machinery, equipment, furniture, fixtures, inventories (raw materials, work-in-progress, finished goods and supplies), titled motor vehicles, leases, finished goods and supplies, contract rights, claims, causes of action, accounts receivable, any and all tangible and intangible assets and other real and/or personal property owned by Maker, whether or not purchased with the Loan proceeds and whether now owned or later acquired, arising of every kind and nature and all proceeds and products therefrom (hereinafter collectively referred to as the "Collateral"), but the grant of the first security interest as is detailed above does not, in any way, invalidate or reduce the effectiveness of any existing security interests, first or otherwise, given by Maker to Lender;  and, (B) must give **$12,460.99** cash collateral (the "Cash Collateral") to Lender before the Note is funded. Maker hereby authorizes Lender to file such financing statements or amendments thereto as Lender deems to be necessary to perfect Lender's security interest in the Collateral. The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (a "Guarantor") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Lender's possession shall be non-interest bearing and will be commingled with Lender's general funds. Holder may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Holder.

**(4)** Any of the following occurrences shall constitute a default under this Note: (A) The non-payment when due of any installment to be made hereunder, and such default continues until the earlier of: (i) 5 days after written notice; or, (ii) 10 days; and/or (B) failure to perform any requirement of this Note or of any other agreement delivered by Maker to Holder; and/or (C) Failure to restore any Cash Collateral applied by Holder within 5 days after written notice; and/or (D) If the Collateral is subject to levy or execution or other judicial process, and the same is not removed or bonded within 10 days after any lien is placed thereon; (E) If the interest of Maker and/or Maker's principals in the Premises shall pass from Maker and/or Maker's principals, voluntarily or involuntarily; and/or (F) If the Premises or the improvements therein or thereto shall be substantially damaged in any manner; (G) If any of the representations and/or warranties detailed in paragraph (6) below turn out not to be true; (H) If Maker and/or any Guarantor fails to either comply with or abide by the Affirmative and Negative Covenants detailed below in paragraphs (7) and (8), respectively; and/or (I) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Holder; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings; (iv) appointment of a receiver or an assignment for the benefit of creditors; (v) making or sending a notice of an intended bulk sale; (v) the whole or partial suspension or liquidation of either of their usual business; (vi) failure to pay any tax when due; (vii) having made or making any misrepresentation to the Lender or Holder for the purpose of obtaining credit or an extension of credit; and, (ix) default with respect to the payment of money owed to Holder or any third person or entity pursuant to any agreement, lease (including but not limited to the real estate lease for Maker's principal place of business (the "Lease")) or other instrument beyond any period of grace provided therein, or default in the performance of any other term, condition or covenant contained in any document under which such obligation is created; and/or (J) Holder's reasonable and written determination, made in good faith, that the prospect of payment or other performance by Maker is materially impaired.

**(5)** In the event of the occurrence of any default hereunder and written notice thereof, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently and: (A) at the option of Holder, all past, present and future payments required by this Note shall immediately become due and payable; (B) Maker and all Guarantors will jointly and severally pay to Holder such further amount as shall be sufficient to cover the cost and expense of enforcing this Note, including but not limited to: reasonable compensation to the attorneys of Holder which are hereby deemed to be 15% of the then balance due and owing on this Note, but in no event less than $1,000.00 nor more than that permitted under applicable law; costs and expenses directly or indirectly related to the Collateral (i.e., costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral); (C) Maker will, at request of Holder, properly crate and ship the Collateral, at all Maker's sole cost and expense, to any place within the Continental United States designated by Holder; (D) Holder may, at its sole and exclusive option, perform for Maker, any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note; (E) Holder shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Holder will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the Maker's notice address at least 7 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Holder and/or its representative may purchase all or part of the Collateral at a public or private sale; (F) at the option of Holder, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Holder receives payment in full; (G) Holder shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter the Premises peaceably by Holder's own means, breaking locks when necessary, or with legal process, in which case Maker agrees not to resist or interfere, and: (i) render the Collateral unusable without permanently diminishing the Collateral's value; and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner, protection, and/or removal; and/or (iii) designate an interim agent (the "Interim Tenant") to operate the Premises (if an Interim Tenant is so designated, pay Landlord all current rent and abide by all conditions of the Lease during the time it occupies the Premises and, during this time, Lender shall diligently attempt to locate a Replacement Tenant - see the following subsection for a definition of the term, "Replacement Tenant"); and/or (iv) appoint any other person or concern (the "Replacement Tenant") to take over and operate the Collateral in the Premises, in which case Maker, at Lender's option, shall be deemed to have assigned, with full recourse, the unexpired term of the Lease, including any option or renewal periods, to said Replacement Tenant, provided the Replacement Tenant agrees, in writing, to comply with terms and conditions identical to all of those in the Lease (hereinafter referred to as the "New Lease"), however no past due rentals shall be the obligations of the Replacement Tenant and Maker shall nevertheless remain liable to the Landlord for the prompt payment of all of the rentals and the performance of all of the provisions of both its Lease and the New Lease, and, to the extent that Lender pays any money to Landlord (i.e., rent or past due rent, assignment fee, administrative charge, etc.) to effectuate the Replacement Tenant's occupancy of the Premises, Maker shall reimburse Lender, within seven days of Lender's demand therefore, for any amount so paid to the Landlord by Lender and, to the extent any such sums are not so reimbursed by Maker to Lender, they shall be chargeable with interest computed at 15.9% per annum and added to the then balance due hereunder; and, (H) this Agreement shall constitute an irrevocable power of attorney from Maker to Lender authorizing Lender to assign the Lease, but Maker understands and agrees that Lender shall not, in any way, be liable for the failure of the Interim Tenant or the Replacement Tenant to pay rent to Landlord.

**(6)** To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: (A) Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; (B) Maker either owns the Premises or has a valid Lease therefor with the owner of the building in which the Premises are located. If the Premises are leased to Maker and the Lease is scheduled to expire prior to the payment in full of the Note, Maker must prove to Lender: (i) before Lender funds any portion of the Note, that Maker has the right to extend the term of the Lease to a date that is after the Note's maturity date and such right can be exercised at least 120 days prior to the Lease's scheduled termination; and, (ii) at least 90 days prior to the scheduled termination date of the Lease, that the Lease has been extended to a date that is after the Note's maturity date; (C) they have the power to execute this Note and deliver same to Lender; (D) The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party; (E) There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors; (F) Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; (G) they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; (H) Maker, to the best of its knowledge, is not in breach of, in default under, or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; and, (I) Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business.

**(7)** So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Holder such evidence of compliance as may be requested by Holder, to wit: (A) Maker will substantially and timely comply at all times with all its obligations associated with Maker's business at the Premises; (B) Maker agrees not to, without first obtaining the written consent of Holder: (i) cancel, surrender, modify, alter or assign the Lease, or sublet all or any part of the Premises; or, (ii) permit the cancellation, modification, alteration or assignment of the Lease, or the sublet of all or any part of the Premises; (C) Keep accurate and complete books and records and maintain same; (D) If requested by Holder, Maker shall forward to Holder or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end; (E) Maker will at all reasonable times permit the Holder to visit the Premises to inspect the Collateral, the Premises and Maker's books of account; (F) Obtain insurance policies for comprehensive property and fire insurance with extended coverage from an insurance company licensed to do business in the state where the Premises are located that has a minimum A.M. Best's rating of B+ or better, naming Holder as mortgagee and loss payee in an amount not less than the then current outstanding balance of this Note, covering the Premises and the Collateral; (G) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note; (H) Notify Holder of litigation involving amounts of $50,000.00 or more to which Maker and/or any Guarantor is a party by mailing to Holder, attention: President, by certified mail within five days of receipt thereof, a copy of the complaint, motion for judgment, or other such pleadings served on or by Maker or any Guarantor; (I) Maker will keep the Collateral, the Premises and other equipment and machinery therein in good repair, working order and condition, and will make all needful and proper repairs, renewals, replacements, additions and improvements thereto; (J) Maker will substantially and timely comply at all times with other agreements to which Maker is a party; (K) Maker will promptly pay and discharge, or cause to be paid and discharged, when due any and all income taxes, federal or otherwise, lawfully assessed and imposed upon Maker, and any and all lawful taxes, levies and assessments whatsoever upon Maker's property and every part thereof, provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such income taxes, federal or otherwise or such other taxes, rates, levies or assessments; (L) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral; (M) Allow Holder the right, without any Holder obligation, to make

THIS IS A COPY

No authoritative copy of this record is held at na2.docusign.net

any or all payments to creditors (including but not limited to the Landlord of the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Holder's rights and Holder's security interest(s) and/or mortgages in the Collateral and Maker hereby authorizes Holder, at Maker's sole option, to contest any or all of such obligations of Maker and to collect 100% of any refunds or rebates arising from such contest(s); (N) Permit Holder to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Holder's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith; (O) Maker will strictly comply with requirements of any City, State, or Federal Law relating to the storage or use of hazardous materials; (P) Allow Holder the right, without any Holder obligation, to cure any failure to comply with any applicable Hazardous Waste Law; (Q) Maker will hold and save Holder free and harmless against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Holder due to Maker's and/or any Guarantor's default under this Agreement; and, (R) Maker will hold and save Holder free and harmless from any causes of action, claims, damages and liabilities of a contractual or tax nature due to the acts of Maker, and to provide counsel, at Maker's own expense, to defend Holder against any such claim.

**(8)** Except with the prior written consent of Holder: (A) Maker and the Guarantor(s) will not make any material change in organization or management or the manner in which Maker's business is conducted; (B) Maker will not become party to any merger or consolidation with any company or entity of any kind whatsoever, or sell substantially all of its assets, liquidate or dispose of its business; (C) Maker will not become a guarantor of obligations of any other person, firm, or entity; (D) Maker and the Guarantor(s) will not transfer, sell, lease or in any other manner convey any equitable, beneficial or legal interest in any of the Collateral to any person or other entity; (E) Maker and the Guarantor(s) will keep the Collateral at the Premises; (F) Maker will not create any new indebtedness, nor assume or guarantee or become or remain liable, directly or indirectly except in the normal course of Maker's business; (G) Maker and the Guarantor(s) will not create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral; (H) Maker will not borrow money in excess of $50,000.00 (the aforesaid restriction is in total, not per lender, but shall not apply to routine trade accounts payable incurred to obtain merchandise, inventory, parts, supplies or services obtained on open account; (I) Maker shall not make, create, incur or suffer or permit to be created or incurred or continue in existence any mortgage, pledge, lien, charge or other encumbrance or security interest of any kind upon or in any of Maker's property or assets now owned or hereafter acquired; (J) Maker and the Guarantor(s) will not permit any judgment obtained against Maker or the Guarantor(s) in an amount exceeding $24,999.99 to remain unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and, (K) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise.

**(9)** All parties to this Note and the following Irrevocable Guaranty: (A) expressly waive, to the extent permitted by law: presentment for payment; notice of dishonor; protest; notice of protest of this Note or the following Irrevocable Guaranty; other notice of any kind and all demands whatsoever; and, (B) agree not to make any claim against one another for any consequential damages.

**(10)** The Holder shall not by any act of delay, commission, failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Holder, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Holder of any right or remedy under the terms of this Note or the following Irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Holder would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Holder, and no course of dealing between Maker and/or Guarantors and Holder shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Holder. No notice to or demand on Maker or any Guarantor in any case shall entitle Maker or any such Guarantor to any other or further notice or demand in the same, similar other circumstances.

**(11)** Notwithstanding any provisions of this Note to the contrary: (A) the maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits, such excess payment shall be automatically credited to principal as a permitted partial prepayment without any prepayment fee being due with respect thereto; (B) any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law shall be void and deemed deleted therefrom without invalidating any other provision thereof; and, (C) time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below.

**(12)** This Note, the following Irrevocable Guaranty and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Holder, whether or not arising out of or relating to this Note: (A) all parties to this Note and the following Irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches, and any set-off, counterclaim or cross-claim of any nature or description, other than actual payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender or Holder would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender or Holder in a separate action, such set-off, counterclaim or cross-claim may be interposed in any action brought by Lender or Holder); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, and/or Nassau, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter.

**(13)** Words used in this Note and the following Irrevocable Guaranty: (A) as singular shall be construed to mean the plural where necessary; and, (B) as plural shall be construed to mean the singular where necessary. The necessary grammatical changes required to make the provisions of this Note apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed. In the event that any word, sentence, paragraph or article of this Note is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted. The Uniform Commercial Code shall govern the rights, duties and remedies of the parties hereto.

**(14)** Maker agrees to pay all expenses incurred in connection with this Note including all title insurance premiums, appraisal costs, and recording charges. Maker further agrees to pay a non-refundable documentation fee to Lender in the amount of **$695.00** and a $150.00 Disposition charge at loan expiration, termination or default as reimbursement for all of Lender's expenses associated with the release and/or transfer of liens against the Collateral (but not the recording of such releases) and, where applicable, transfer of title to the Collateral.  The Lender and/or Holder may negotiate, assign and transfer this Agreement and any other document executed in connection herewith, and may deliver all or any part of any collateral security held in connection herewith to any transferee, who shall assume Lender's obligations hereunder and the Lender shall thereafter be forever released and discharged of and from any and all liability or responsibility to Maker respecting all liability or responsibility to them under this Agreement, and for and on account of any Collateral so delivered.

THIS IS A COPY
Non-authoritative Copy - record is held at na2.docusign.net

Maker may not transfer or assign this Note. Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same. By signing this Note and/or the Irrevocable Guaranty below, the undersigned, who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account. All terms and provisions of this Note shall be binding upon and shall inure to the benefit of, and be enforceable by the parties hereto, their respective legal representatives, successors and assigns. To the extent that any communications and notices are required by this Note, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other. Each of the parties hereto represents that the other parties, their agents, servants or employee have made no representation or statement whether oral or in writing, relating to or concerning this Note other than specifically set forth herein. This Note and the following Irrevocable Guaranty: (C) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (D) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is 6467236313.

**(15)** The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to either order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. LENDER MAKES NO WARRANTY OF TITLE TO ANY SOFTWARE, SOFTWARE LICENSES AND/OR THE RIGHT TO USE ANY SOFTWARE. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and manufacturer for a description of any such rights.

**Maker: Sparkle Clean Laundromat LLC**

by _____

  Daniel Lee, Sole Member

**Lender: Eastern Funding LLC**

by _Ana Lage_

  EA22DF15F91D4D0...

  Ana Lage        Documentation Manager AVP

  Print Name and Title

**IRREVOCABLE GUARANTY**: Unless otherwise defined, words used herein shall have the same meaning as in the above Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby: (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise, whether arising by virtue of the Note or otherwise; (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender; (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker; and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of the Note and this Irrevocable Guaranty. The provisions hereof may not be changed orally, but only by a writing signed by Lender. The undersigned Guarantor(s) represent and warrant to Lender that: (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and, (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

_____

  Daniel Lee

  Notice Address: 1464 18th Ave, San Francisco CA 94122-3409

                                                 100%

                                         My Ownership

                                 Percentage of Maker

# EXHIBIT 7



**09/10/2019**

Sparkle Clean Laundromat LLC
1464 18th Ave
San Francisco, CA  94122-3409

Attn: Daniel Lee,

**RE:  Eastern Funding LLC Application# 1032459**

Dear Daniel Lee:

This letter is to confirm the following information regarding the loan documents between the above referenced company and Eastern Funding LLC, including but not limited to the Secured Promissory Note and Agreement and all ancillary documents including credit application.

Please be advised that where it reads:

Principal and interest shall be paid in 108 self-amortizing, consecutive monthly installments commencing and due and payable on ***October 10, 2019** (this date shall be one month after the date of funding) and on the ***10th** day of each and every month thereafter (if this date is the 29th or the 30th, the February payment shall be due on the last day of February), to and including ***September 10, 2028** (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 60, each monthly payment shall be $12,460.99. On the due date of installment payment number 60, ***September 10, 2024**, the annual interest rate will adjust to Prime plus 3.00%, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61, but under no circumstances will the annual interest rate ever be less than 8.25% ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate.  The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers.  If Prime remains at the same rate that it is on the date hereof, all remaining consecutive monthly installments, starting with installment payment 61 shall each be $12,460.99. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion. No Note funding shall occur before the Collateral (defined below) is delivered to and installed at the Premises.
* Lender is hereby authorized by Maker to insert the applicable dates.

It is now amended to read:

Principal and interest shall be paid in 108 self-amortizing, consecutive monthly installments commencing and due and payable on ***October 11, 2019** (this date shall be one month after the date of funding) and on the ***11th** day of each and every month thereafter (if this date is the 29th or the 30th, the February payment shall be due on the last day of February), to and including ***September 11, 2028** (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 60, each monthly payment shall be $12,460.99. On the due date of installment payment number 60, ***September 11, 2024**, the annual interest rate will adjust to Prime plus 3.00%, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61, but under no circumstances will the annual interest rate ever be less than 8.25% ("Rate Floor"). Any increase in the Prime Rate would automatically increase

the Rate Floor by the same amount as the increase in the Prime Rate.  The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers.  If Prime remains at the same rate that it is on the date hereof, all remaining consecutive monthly installments, starting with installment payment 61 shall each be $12,460.99. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion. No Note funding shall occur before the Collateral (defined below) is delivered to and installed at the Premises.
* Lender is hereby authorized by Maker to insert the applicable dates.

All other information will remain unchanged.


Sincerely,

Tabitha Paez

*Tabitha Paez*

Eastern Funding LLC
Phone 6467236327
Email  tpaez@easternfunding.com

# EXHIBIT 8

THIS IS A COPY
This document is a view of the Authoritative Copy held
by the designated custodian

This **Modification Agreement regarding Loan #13337-M1** (the "Loan") is between: (a) Sparkle Clean Laundromat LLC ("Maker"), whose notice address is 1464 18th Ave, San Francisco, CA 94122-3409; (b) Daniel Lee (a "Guarantor"), whose notice address is 1464 18th Ave, San Francisco, CA 94122-3409; (c) Eastern Funding LLC ("Lender"), whose notice address is 213 West 35th St., 10th Fl., New York, NY 10001.

Whereas: (a) Maker originally borrowed $947,699.66 from Lender pursuant to a promissory note (the "Note") and ancillary documents dated on or about 09/03/2019 (the Note and the ancillary documents shall hereinafter be collectively referred to as the "Loan Documents"); (b) the Guarantors jointly, severally and irrevocably guaranteed, to Lender, Maker's payment and performance of the Loan Documents; and, (c) Maker desires that the monthly payments required by the Note be changed and Lender, pursuant to the terms and conditions contained herein, consents thereto.

THEREFORE IT IS AGREED AMONGST THE PARTIES AS FOLLOWS:

1)   Unless otherwise defined in this Modification Agreement, capitalized terms used herein shall have the same meaning as is detailed in the Loan Documents.

2)   Maker and Guarantors agree that all of the terms and conditions of the Loan Documents not modified hereby shall remain in full force and effect as if fully set forth herein.

3)   This Modification Agreement shall be effective as of **03/11/2020** (the "Effective Date"), but if this Modification Agreement is not signed and returned to Lender by May 15th, 2020, this Modification Agreement shall have no force or effect and any previous offers made by Lender shall be null and void without further notification to Maker or Guarantors

It is hereby acknowledged and agreed that, as of **03/11/2020** the balance due on the Note is **$911,411.74**, and the Note's initial annual rate is **8.25%**. Principal and interest shall be paid in **102** self-amortizing payments of principal and interest due and payable on **7/11/2020 12:00:00 AM** and on the 11th day of each and every month thereafter, to and including **12/11/2028** (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 60, each monthly payment of principal and interest shall be **$12,719.83**. On the due date of installment payment number 60, **09/11/2024**, the annual interest rate will adjust to Prime plus **3.00%**, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61, but under no circumstances will the annual interest rate ever be less than **8.25** ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate. The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers. If Prime remains at the same rate that it is on the date hereof through the billing date of monthly installment number 60, all remaining consecutive monthly installments, starting with monthly installment number 61, shall each be **$12,719.83**. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion

4)   Lender reserves all of its rights and remedies and unless and until signed by Lender, this Modification Agreement shall be of no force or effect.

5)   If Maker fails to timely comply with all of the terms and conditions hereof, at Lender's option all of the terms and conditions of this Modification Agreement, other than this paragraph and the following paragraph, shall be of no force or effect and all payments received by Lender after the Effective Date shall be applied by Lender to the Note in accordance with the Note's terms and conditions.

6)   This Modification Agreement: (a) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (b) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is 6467236313.

7)   In any litigation between any of the parties hereto, whether or not related to the Note or the Loan Documents, all parties hereto expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail.

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**Maker: Sparkle Clean Laundromat LLC**

by _____    May 28, 2020
    Daniel Lee , Sole Member        Date


X _____    May 28, 2020
    Daniel Lee  owner        Date


**Eastern Funding LLC**

by _____    May 28, 2020 /201

Print name  Ana Lage    Documentation Manager Date
And title _____ AVP

COPY VIEW

# EXHIBIT 9

THIS A COPY
The authoritative copy of this record is held at na2.docusign.net

| **$170,798.16** | **SECURED PROMISSORY NOTE and AGREEMENT** | |
|---|---|---|
| Place of Execution: New York, NY | (this "Note" or the "Note") | Date: 04/02/2019 |

**FOR VALUE RECEIVED,** TRIPLE J LAUNDROMAT LLC ("Maker"),  with a principal place of business at 14278 E 14th St Ste A, San Leandro, CA 94578-2775, a notice address at 14278 E 14th St Ste A, San Leandro, CA 94578-2775 and also doing business at 14278 E 14th St Ste A, San Leandro, CA 94578-2775 (the "Premises"), promises to pay to the order of **Eastern Funding LLC** ("Lender"), at **213 West 35th Street, New York, NY 10001** or at such other place as may be designated in writing by the then holder (the "Holder") of this Note, the principal sum of $170,798.16 with interest thereon computed on the basis of a 360 day year from the date of funding at an initial annual rate of 8.75%, but if the published Prime Rate of interest on the date of funding is greater than the published Prime Rate of interest on the date hereto (Prime rate equals 5.50% as of 04/02/2019), such increase shall be added to the aforementioned annual rate and the payments detailed below will be adjusted accordingly. Principal and interest shall be paid in 84 self-amortizing, consecutive monthly installments commencing and due and payable on *April 15____, 2019___ (this date shall be one month after the date of funding) and on the *_15th_day of each and every month thereafter (if this date is the 29th or the 30th, the February payment shall be due on the last day of February), to and including *April 15____, 20_26_ (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 42, each monthly payment shall be $2,726.36. On the due date of installment payment number 42, * October 15____, 20 22_, the annual interest rate will adjust to Prime plus 3.25%, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 43, but under no circumstances will the annual interest rate ever be less than 8.75% ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate.  The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers.  If Prime remains at the same rate that it is on the date hereof, all remaining consecutive monthly installments, starting with installment payment 43 shall each be $2,726.36. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion. No Note funding shall occur before the Collateral (defined below) is delivered to and installed at the Premises.
* Lender is hereby authorized by Maker to insert the applicable dates.

**(1)** If any payment or other amount due hereunder is not made within 10 days from its due date, a late charge of 5% of each payment so overdue, may be charged by the Holder to defray the expenses incident to processing such payment.  The Maker may not prepay any outstanding principal sum in excess of that required to pay the next scheduled installment of principal and interest during the first 12 months of the principal and interest term (the "Non-Prepay Period"), thereafter this Note is prepayable at any time, without fee.  If, during the Non-Prepay Period: (i) there is a prepayment of all or any part of the principal or interest, or, (ii) if Maker defaults in the performance of Maker's obligations hereunder, then to compensate Lender for lost interest and/or principal, Maker shall pay to Holder, in addition to any unpaid principal, finance charges, and other charges then due and owing, a prepayment fee equal to two monthly installments plus 100% of the interest Lender would have earned during the Non-Prepay Period less all of the interest actually paid by Maker during the Non-Prepay Period.  Such prepayment fee shall be in addition to any unpaid principal, finance charges, and other charges then due and owing.

**(2)** In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Holder shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above. If on two occasions, within any 12 month period, Maker's checks and/or Maker's authorized, automatic payments to Holder are not honored when presented in due course to the bank on which they are drawn, Holder shall be permitted to: (A) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (B) increase the annual interest rate then being charged by 0.5%; and/or, (C) refuse to honor any contractual provisions herein that would, at some point in the future, reduce the annual interest rate. In addition to the 0.5% detailed in subparagraph (2)(B) above, if Maker withdraws Maker's authorization for Holder to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Holder shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(3)** In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due to or become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker: (A) hereby grants to Lender and Lender hereby accepts, a purchase money security interest in the equipment and assets detailed on Schedule "A" attached, and all proceeds and products therefrom (hereinafter the "Collateral"), but the grant of this purchase money security interest does not, in any way, invalidate or reduce the effectiveness of any existing security interests, first or otherwise, given by Maker to Lender; and, (B) must give **$2,726.36** cash collateral (the "Cash Collateral") to Lender before the Note is funded. Maker hereby authorizes Lender to file such financing statements or amendments thereto as Lender deems to be necessary to perfect Lender's security interest in the Collateral. The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (a "Guarantor") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Maker's possession shall be non-interest bearing and will be commingled with Maker's general funds. Holder may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Holder.

**(4)** Any of the following occurrences shall constitute a default under this Note: (A) The non-payment when due of any installment required to be made hereunder, and such default continues until the earlier of: (i) 5 days after written notice; or, (ii) 10 days; and/or (B) failure to perform any requirement of this Note or of any other agreement delivered by Maker to Holder; and/or (C) Failure to restore any Cash Collateral applied by Holder within 5 days after written notice; and/or (D) If the Collateral is subject to levy or execution or other judicial process, and the same is not removed or bonded within 10 days after any lien is placed thereon; (E) If the interest of Maker and/or Maker's principals in the Premises shall pass from Maker and/or Maker's principals, voluntarily or involuntarily; and/or (F) If the Premises or the improvements therein or thereto shall be substantially damaged in any manner; (G) If any of the representations and/or warranties detailed in paragraph (6) below turn out not to be true; (H) If Maker and/or any Guarantor fails to either comply with or abide by the Affirmative and Negative Covenants detailed below in paragraphs (7) and (8), respectively; and/or (I) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Holder; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings; (iv) appointment of a receiver or an assignment for the benefit of creditors; (iv) making or sending a notice of an intended bulk sale; (v) the whole or partial suspension or liquidation of either of their usual business; (vi) failure to pay any tax when due; (vii) having made or making any misrepresentation to the Lender or Holder for the purpose of obtaining credit or an extension of credit; and, (ix) default with respect to the payment of money owed to Holder or any third person or entity pursuant to any agreement, lease (including but not limited to the real estate lease for Maker's principal place of business (the "Lease")) or other instrument beyond any period of grace provided therein, or default in the performance of any other term, condition or covenant contained in any document under which such obligation is created; and/or (J) Holder's reasonable and written determination, made in good faith, that the prospect of payment or other performance by Maker is materially impaired.

**(5)** In the event of the occurrence of any default hereunder and written notice thereof, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently and: (A) at the option of Holder, all past, present and future payments required by this Note shall immediately become due and payable; (B) Maker and all Guarantors will jointly and severally pay to

THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

Holder such further amount as shall be sufficient to cover the cost and expense of enforcing this Note, including but not limited to: reasonable compensation to the attorneys of Holder which are hereby deemed to be 15% of the then balance due and owing on this Note, but in no event less than $1,000.00 nor more than that permitted under applicable law; costs and expenses directly or indirectly related to the Collateral (i.e., costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral); (C) Maker will, at request of Holder, properly crate and ship the Collateral, all at Maker's sole cost and expense, to any place within the Continental United States designated by Holder; (D) Holder may, at its sole and exclusive option, perform for Maker, any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note; (E) Holder shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Holder will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the Maker's notice address at least 7 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Holder and/or its representative may purchase all or part of the Collateral at a public or private sale; (F) at the option of Holder, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Holder receives payment in full; (G) Holder shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter the Premises peaceably by Holder's own means, breaking locks where necessary, or with legal process, in which case Maker agrees not to resist or interfere, and: (i) render the Collateral unusable without permanently diminishing the Collateral's value; and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner, protection, and/or removal; and/or (iii) designate an interim agent (the "Interim Tenant") to operate the Premises (if an Interim Tenant is so designated, pay Landlord all current rent and abide by all conditions of the Lease during the time it occupies the Premises and, during this time, Lender shall diligently attempt to locate a Replacement Tenant - see the following subsection for a definition of the term, "Replacement Tenant"); and/or (iv) appoint any other person or concern (the "Replacement Tenant") to take over and operate the Collateral in the Premises, in which case Maker, at Lender's option, shall be deemed to have assigned, with full recourse, the unexpired term of the Lease, including any option or renewal periods, to said Replacement Tenant, provided the Replacement Tenant agrees, in writing, to comply with terms and conditions identical to all of those in the Lease (hereinafter referred to as the "New Lease"), however no past due rentals shall be the obligations of the Replacement Tenant and Maker shall nevertheless remain liable to the Landlord for the prompt payment of all of the rentals and the performance of all of the provisions of both its Lease and the New Lease, and, to the extent that Lender pays any money to Landlord (i.e., rent or past due rent, assignment fee, administrative charge, etc.) to effectuate the Replacement Tenant's occupancy of the Premises, Maker shall reimburse Lender, within seven days of Lender's demand therefore, for any amount so paid to the Landlord by Lender and, to the extent any such sums are not so reimbursed by Maker to Lender, they shall be chargeable with interest computed at 15.9% per annum and added to the then balance due hereunder; and, (H) this Agreement shall constitute an irrevocable power of attorney from Maker to Lender authorizing Lender to assign the Lease, but Maker understands and agrees that Lender shall not, in any way, be liable for the failure of the Interim Tenant or the Replacement Tenant to pay rent to Landlord.

**(6)** To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: (A) Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; (B) Maker either owns the Premises or has a valid Lease therefor with the owner of the building in which the Premises are located. If the Premises are leased to Maker and the Lease is scheduled to expire prior to the payment in full of the Note, Maker must prove to Lender: (i) before Lender funds any portion of the Note, that Maker has the right to extend the term of the Lease to a date that is after the Note's maturity date and such right can be exercised at least 120 days prior to the Lease's scheduled termination; and, (ii) at least 90 days prior to the scheduled termination date of the Lease, that the Lease has been extended to a date that is after the Note's maturity date; (C) they have the power to execute this Note and deliver same to Lender; (D) The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party; (E) There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors; (F) Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; (G) they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; (H) Maker, to the best of its knowledge, is not in breach of, in default under, or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; and, (I) Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business.

**(7)** So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Holder such evidence of compliance as may be requested by Holder, to wit: (A) Maker will substantially and timely comply at all times with all its obligations associated with Maker's business at the Premises; (B) Maker agrees not to, without first obtaining the written consent of Holder: (i) cancel, surrender, modify, alter or assign the Lease, or sublet all or any part of the Premises; or, (ii) permit the cancellation, modification, alteration or assignment of the Lease, or the sublet of all or any part of the Premises; (C) Keep accurate and complete books and records and maintain same; (D) If requested by Holder, Maker shall forward to Holder or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end; (E) Maker will at all reasonable times permit the Holder to visit the Premises to inspect the Collateral, the Premises and Maker's books of account; (F) Obtain insurance policies for comprehensive property and fire insurance with extended coverage from an insurance company licensed to do business in the state where the Premises are located that has a minimum A.M. Best's rating of B+ or better, naming Holder as mortgagee and loss payee in an amount not less than the then current outstanding balance of this Note, covering the Premises and the Collateral; (G) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note; (H) Notify Holder of litigation involving amounts of $50,000.00 or more to which Maker and/or any Guarantor is a party by mailing to Holder, attention: President, by certified mail within five days of receipt thereof, a copy of the complaint, motion for judgment, or other such pleadings served on or by Maker or any Guarantor; (I) Maker will keep the Collateral, the Premises and other equipment and machinery therein in good repair, working order and condition, and will make all needful and proper repairs, renewals, replacements, additions and improvements thereto; (J) Maker will substantially and timely comply at all times with other agreements to which Maker is a party; (K) Maker will promptly pay and discharge, or cause to be paid and discharged, when due any and all income taxes, federal or otherwise, lawfully assessed and imposed upon Maker, and any and all lawful taxes, levies and assessments whatsoever upon Maker's property and every part thereof, provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such income taxes, federal or otherwise or such other taxes, rates, levies or assessments; (L) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral; (M) Allow Holder the right, without any Holder obligation, to make any or all payments to creditors (including but not limited to the Landlord or the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Holder's rights and Holder's security interest(s) and/or mortgages in the Collateral and Maker hereby authorizes Holder, at Maker's sole option, to contest any or all of such obligations of Maker and to collect 100% of any refunds or rebates arising from such

THIS IS A COPY
This Authoritative Copy of this record is held at na2.docusign.net

contest(s); (N) Permit Holder to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Holder's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith; (O) Maker will strictly comply with requirements of any City, State, or Federal Law relating to the storage or use of hazardous materials; (P) Allow Holder the right, without any Holder obligation, to cure any failure to comply with any applicable Hazardous Waste Law; (Q) Maker will hold and save Holder free and harmless against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Holder due to Maker's and/or any Guarantor's default under this Agreement; and, (R) Maker will hold and save Holder free and harmless from any causes of action, claims, damages and liabilities of a contractual or tax nature due to the acts of Maker, and to provide counsel, at Maker's own expense, to defend Holder against any such claim.

**(8)** Except with the prior written consent of Holder: (A) Maker and the Guarantor(s) will not make any material change in organization or management or the manner in which Maker's business is conducted; (B) Maker will not become party to any merger or consolidation with any company or entity of any kind whatsoever, or sell substantially all of its assets, liquidate or dispose of its business; (C) Maker will not become a guarantor of obligations of any other person, firm, or entity; (D) Maker and the Guarantor(s) will not transfer, sell, lease or in any other manner convey any equitable, beneficial or legal interest in any of the Collateral to any person or other entity; (E) Maker and the Guarantor(s) will keep the Collateral at the Premises; (F) Maker will not create any new indebtedness, nor assume or guarantee or become or remain liable, directly or indirectly except in the normal course of Maker's business; (G) Maker and the Guarantor(s) will not create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral; (H) Maker will not borrow money in excess of $50,000.00 (the aforesaid restriction is in total, not per lender, but shall not apply to routine trade accounts payable incurred to obtain merchandise, inventory, parts, supplies or services obtained on open account); (I) Maker shall not make, create, incur or suffer or permit to be created or incurred or continue in existence any mortgage, pledge, lien, charge or other encumbrance or security interest of any kind upon or in any of Maker's property or assets now owned or hereafter acquired; (J) Maker and the Guarantor(s) will not permit any judgment obtained against Maker or the Guarantor(s) in an amount exceeding $24,999.99 to remain unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and, (K) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise.

**(9)** All parties to this Note and the following Irrevocable Guaranty: (A) expressly waive, to the extent permitted by law: presentment for payment; notice of dishonor; protest; notice of protest of this Note or the following Irrevocable Guaranty; other notice of any kind and all demands whatsoever; and, (B) agree not to make any claim against one another for any consequential damages.

**(10)** The Holder shall not by any act of delay, commission, failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Holder, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Holder of any right or remedy under the terms of this Note or the following Irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Holder would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Holder, and no course of dealing between Maker and/or Guarantors and Holder shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Holder. No notice to or demand on Maker or any Guarantor in any case shall entitle Maker or any such Guarantor to any other or further notice or demand in the same, similar other circumstances.

**(11)** Notwithstanding any provisions of this Note to the contrary: (A) the maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits, such excess payment shall be automatically credited to principal as a permitted partial prepayment without any prepayment fee being due with respect thereto; (B) any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law shall be void and deemed deleted therefrom without invalidating any other provision thereof; and, (C) time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below.

**(12)** This Note, the following Irrevocable Guaranty, and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Holder, whether or not arising out of or relating to this Note: (A) all parties to this Note and the following Irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches, and any set-off, counterclaim or cross-claim of any nature or description, other than actual payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender or Holder would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender or Holder in a separate action, such set-off, counterclaim or cross-claim may be interposed in any action brought by Lender or Holder); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, and/or Nassau, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter.

**(13)** Words used in this Note and the following Irrevocable Guaranty: (A) as singular shall be construed to mean the plural where necessary; and, (B) as plural shall be construed to mean the singular where necessary. The necessary grammatical changes required to make the provisions of this Note apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed. In the event that any word, sentence, paragraph or article of this Note is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted. The Uniform Commercial Code shall govern the rights, duties and remedies of the parties hereto.

**(14)** Maker agrees to pay all expenses incurred in connection with this Note including all title insurance premiums, appraisal costs, and recording charges. Maker further agrees to pay a non-refundable documentation fee to Lender in the amount of **$295.00** and a $150.00 Disposition charge at loan expiration, termination or default as reimbursement for all of Lender's expenses associated with the release and/or transfer of liens against the Collateral (but not the recording of such releases) and, where applicable, transfer of title to the Collateral.  The Lender and/or Holder may negotiate, assign and transfer this Agreement and any other document executed in connection herewith, and may deliver all or any part of any collateral security held in connection herewith to any transferee, who shall assume Lender's obligations hereunder and the Lender shall thereafter be forever released and discharged of and from any and all liability or responsibility to Maker respecting all liability or responsibility to them under this Agreement, and for and on account of any Collateral so delivered. Maker may not transfer or assign this Note. Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same. By signing this Note and/or the Irrevocable Guaranty below, the undersigned, who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a

Appl 1030484Page **3** of **4** 10162017

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account. All terms and provisions of this Note shall be binding upon and shall inure to the benefit of, and be enforceable by the parties hereto, their respective legal representatives, successors and assigns. To the extent that any communications and notices are required by this Note, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other. Each of the parties hereto represents that the other parties, their agents, servants or employee have made no representation or statement whether oral or in writing, relating to or concerning this Note other than specifically set forth herein. This Note and the following Irrevocable Guaranty: (C) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (D) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is 6467236313.

**(15)** The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to either order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. LENDER MAKES NO WARRANTY OF TITLE TO ANY SOFTWARE, SOFTWARE LICENSES AND/OR THE RIGHT TO USE ANY SOFTWARE. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and manufacturer for a description of any such rights.

Maker: TRIPLE J LAUNDROMAT LLC

by _____

Daniel Lee, Member

Lender: Eastern Funding LLC

by _David Miles_
    703F2B9BBBC4455...
    David Miles            AVP
    Print Name and Title

**IRREVOCABLE GUARANTY:** Unless otherwise defined, words used herein shall have the same meaning as in the above Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby: (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise, whether arising by virtue of the Note or otherwise; (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender; (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker; and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of the Note and this Irrevocable Guaranty. The provisions hereof may not be changed orally, but only by a writing signed by Lender. The undersigned Guarantor(s) represent and warrant to Lender that: (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and, (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

_____        50%
Daniel Lee                                               My Ownership
Notice Address: 1464 18th Ave, San Francisco CA 94122-3409        Percentage of Maker

_____        50%
Chou Yi Chao                                             My Ownership
Notice Address: 1464 18th Ave, San Francisco CA 94122-3409        Percentage of Maker

SCHEDULE "A" to

**$170,798.16 SECURED PROMISSORY NOTE AND AGREEMENT**
**Maker: TRIPLE J LAUNDROMAT LLC        Lender: Eastern Funding LLC**

**$170,798.16 of the $170,798.16 loan proceeds is being used for Maker's purchase of the following equipment:**

| Qty | Description |
| --- | --- |
| 7 | Wascomat/Electrolux 45 Lb. Stack Dryers |
| 6 | Wascomat/Electrolux Stainless Front Panels |
| 1 | Vend-Rite Vending Machine |
| 20 | Coin Boxes |
| 20 | Card Readers |

Plus all accessions, additions and replacements thereto and all proceeds therefrom.

**Maker: TRIPLE J LAUNDROMAT LLC** by _____
Daniel Ice, Member

**Lender: Eastern Funding LLC** by _____

Print Name and Title: David Miles                    AVP

# EXHIBIT 10

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Phone: 212 819-2000 Fax: 212 819-9764 |

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)    11255 - EASTERN

Eastern Funding LLC
213 West 35th Street
Suite 1000
New York, NY 10001

69231322

CALI

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TRIPLE J LAUNDROMAT LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 14278 E 14th St Ste A | San Leandro | CA | 94578 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Eastern Funding LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 213 West 35th Street, Suite 1000 | New York | NY | 10001 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
A PURCHASE MONEY SECURITY INTEREST in the following wherever located assets:

| Qty | Description |
|---|---|
| 7 | Wascomat/Electrolux 45 Lb. Stack Dryers |
| 6 | Wascomat/Electrolux Stainless Front Panels |
| 1 | Vend-Rite Vending Machine |
| 20 | Coin Boxes |
| 20 | Card Readers |

and all replacements substitutions, and all accessions thereto and proceeds thereof.  The claim of the secured party to proceeds hereunder is not a consent to the sale or disposition of any of the above listed assets.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
69231322          XXX0484

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT 11

DocuSign Envelope ID: D5E10C82-4918-4956-BE95-BC76A2A573B3

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

This **Modification Agreement regarding Loan #12958-M1** (the "Loan") is between: (a) TRIPLE J LAUNDROMAT LLC ("Maker"), whose notice address is 14278 E 14th St Ste A, San Leandro, CA  94578-2775; (b) Daniel Lee  (a "Guarantor"), whose notice address is 1464 18th Ave, San Francisco, CA 94122-3409; (c) Chou Yi Chao (a "Guarantor"), whose notice address is 1464 18th Ave, San Francisco, CA 94122-3409; (d) Eastern Funding LLC ("Lender"), whose notice address is 213 West 35th St., 10th Fl., New York, NY 10001.

Whereas: (a) Maker originally borrowed $170,798.16 from Lender pursuant to a promissory note (the "Note") and ancillary documents dated on or about 04/02/2019 (the Note and the ancillary documents shall hereinafter be collectively referred to as the "Loan Documents"); (b) the Guarantors jointly, severally and irrevocably guaranteed, to Lender, Maker's payment and performance of the Loan Documents; and, (c) Maker desires that the monthly payments required by the Note be changed and Lender, pursuant to the terms and conditions contained herein, consents thereto.

THEREFORE IT IS AGREED AMONGST THE PARTIES AS FOLLOWS:

1)   Unless otherwise defined in this Modification Agreement, capitalized terms used herein shall have the same meaning as is detailed in the Loan Documents.

2)   Maker and Guarantors agree that all of the terms and conditions of the Loan Documents not modified hereby shall remain in full force and effect as if fully set forth herein.

3)   This Modification Agreement shall be effective as of <u>03/15/2020</u> (the "Effective Date"), but if this Modification Agreement is not signed and returned to Lender by <u>May 15th, 2020</u>, this Modification Agreement shall have no force or effect and any previous offers made by Lender shall be null and void without further notification to Maker or Guarantors.

It is hereby acknowledged and agreed that, as of **03/15/2020** the balance due on the Note is $**154,394.26**, and the Note's initial annual rate is **8.75%**. Principal and interest shall be paid in **73** self-amortizing payments of principal and interest due and payable on **7/15/2020 12:00:00 AM** and on the 15th day of each and every month thereafter, to and including 07/15/2026 (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 42, each monthly payment of principal and interest shall be $**2,795.38**. On the due date of installment payment number 42, **10/15/2020**, the annual interest rate will adjust to Prime plus **3.25%**, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 43, but under no circumstances will the annual interest rate ever be less than **8.75** ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate. The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers. If Prime remains at the same rate that it is on the date hereof through the billing date of monthly installment number 42, all remaining consecutive monthly installments, starting with monthly installment number 42, shall each be $**2,795.38**. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion

4)   This Modification Agreement: (a) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (b) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is <u>6467236313</u>.

5)   In any litigation between any of the parties hereto, whether or not related to the Note or the Loan Documents, all parties hereto expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail.

DocuSign Envelope ID: D6E10C82-4918-4956-BE95-DC76A2A573B3

Case 4:25-cv-02228-HSG    Document 1    Filed 03/04/25    Page 53 of 79

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**Maker: TRIPLE J LAUNDROMAT LLC**

by _____    May 28, 2020
   Daniel Lee , Managing Member        Date

X _____    May 28, 2020
   Daniel  Lee ,Managing Member        Date

X _____    June 11, 2020
   Chou Yi Chao, Member        Date

**Eastern Funding LLC**

by _____    June 11, 2020
Print name   Nancy Robles  Executive VP Operations
And title _____

COPY VIEW

**[12958-M1]**    Revised 160523

# EXHIBIT 12

THIS IS A COPY
The authoritative copy of this record is held at na2.docusign.net

| $311,386.00 | SECURED PROMISSORY NOTE and AGREEMENT | |
|---|---|---|
| Place of Execution: New York, NY | (this "Note" or the "Note") | Date: 11/13/2018 |

**FOR VALUE RECEIVED**, TRIPLE J INDUSTRIES LLC ("Maker"),  with a principal place of business at 1464 18th Ave, San Francisco, CA  94122-3409, a notice address at 1464 18th Ave, San Francisco, CA 94122-3409 and also doing business at 517 Ofarrell St San Francisco, CA 94102-1931 (the "Premises"), promises to pay to the order of **Eastern Funding LLC** ("Lender"), at **213 West 35th Street, New York, NY 10001** or at such other place as may be designated in writing by the then holder (the "Holder") of this Note, the principal sum of $311,386.00 with interest thereon computed on the basis of a 360 day year from the date of funding at an initial annual rate of 8.50%, but if the published Prime Rate of interest on the date of funding is greater than the published Prime Rate of interest on the date hereto (Prime rate equals 5.25% as of 11/13/2018), such increase shall be added to the aforementioned annual rate and the payments detailed below will be adjusted accordingly. Principal and interest shall be paid in 72 self-amortizing, consecutive monthly installments commencing and due and payable on *March 01____, 201_19_ (this date shall be one month after the date of funding) and on the *1st_ day of each and every month thereafter (if this date is the 29th or the 30th, the February payment shall be due on the last day of February), to and including *_February 1_, 20_25_ (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 60, each monthly payment shall be $5,535.94. On the due date of installment payment number 60, *_February 1_, 20_24_, the annual interest rate will adjust to Prime plus 3.25%, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61, but under no circumstances will the annual interest rate ever be less than 8.50% ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate.  The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers.  If Prime remains at the same rate that it is on the date hereof, all remaining consecutive monthly installments, starting with installment payment 61 shall each be $5,535.94. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion. No Note funding shall occur before the Collateral (defined below) is delivered to and installed at the Premises.
* Lender is hereby authorized by Maker to insert the applicable dates.

**(1)** If any payment or other amount due hereunder is not made within 10 days from its due date, a late charge of 5% of each payment so overdue, may be charged by the Holder to defray the expenses incident to processing such payment.  The Maker may not prepay any outstanding principal sum in excess of that required to pay the next scheduled installment of principal and interest during the first 12 months of the principal and interest term (the "Non-Prepay Period"), thereafter this Note is prepayable at any time, without fee.  If, during the Non-Prepay Period: (i) there is a prepayment of all or any part of the principal or interest, or, (ii) if Maker defaults in the performance of Maker's obligations hereunder, then to compensate Lender for lost interest and/or principal, Maker shall pay to Holder, in addition to any unpaid principal, finance charges, and other charges then due and owing, a prepayment fee equal to two monthly installments plus 100% of the interest Lender would have earned during the Non-Prepay Period less all of the interest actually paid by Maker during the Non-Prepay Period.  Such prepayment fee shall be in addition to any unpaid principal, finance charges, and other charges then due and owing.

**(2)** In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Holder shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above. If on two occasions, within any 12 month period, Maker's checks and/or Maker's authorized, automatic payments to Holder are not honored when presented in due course to the bank on which they are drawn, Holder shall be permitted to: (A) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (B) increase the annual interest rate then being charged by 0.5%; and/or, (C) refuse to honor any contractual provisions herein that would, at some point in the future, reduce the annual interest rate. In addition to the 0.5% detailed in subparagraph (2)(B) above, if Maker withdraws Maker's authorization for Holder to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Holder shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(3)** In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due to or become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker: (A) hereby grants to Lender and Lender hereby accepts, a purchase money security interest in the equipment and assets detailed on Schedule "A" and "B" attached plus a first security interest in all of Maker's wherever located machinery, equipment, furniture, fixtures, inventories (raw materials, work-in-progress, finished goods and supplies), titled motor vehicles, leases, finished goods and supplies, contract rights, claims, causes of action, accounts receivable, any and all tangible and intangible assets and other real and/or personal property owned by Maker, whether or not purchased with the Loan proceeds and whether now owned or later acquired, arising of every kind and nature and all proceeds and products therefrom (hereinafter collectively referred to as the "Collateral"), but the grant of the first security interest as is detailed above does not, in any way, invalidate or reduce the effectiveness of any existing security interests, first or otherwise, given by Maker to Lender;  and, (B) must give **$5,535.94** cash collateral (the "Cash Collateral") to Lender before the Note is funded. Maker hereby authorizes Lender to file such financing statements or amendments thereto as Lender deems to be necessary to perfect Lender's security interest in the Collateral. The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (a "Guarantor") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Lender's possession shall be non-interest bearing and will be commingled with Lender's general funds. Holder may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Holder.

**(4)** Any of the following occurrences shall constitute a default under this Note: (A) The non-payment when due of any installment required to be made hereunder, and such default continues until the earlier of: (i) 5 days after written notice; or, (ii) 10 days; and/or (B) failure to perform any requirement of this Note or of any other agreement delivered by Maker to Holder; and/or (C) Failure to restore any Cash Collateral applied by Holder within 5 days after written notice; and/or (D) If the Collateral is subject to levy or execution or other judicial process, and the same is not removed or bonded within 10 days after any lien is placed thereon; (E) If the interest of Maker and/or Maker's principals in the Premises shall pass from Maker and/or Maker's principals, voluntarily or involuntarily; and/or (F) If the Premises or the improvements therein or thereto shall be substantially damaged in any manner; (G) If any of the representations and/or warranties detailed in paragraph (6) below turn out not to be true; (H) If Maker and/or any Guarantor fails to either comply with or abide by the Affirmative and Negative Covenants detailed below in paragraphs (7) and (8), respectively; and/or (I) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Holder; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings; (iv) appointment of a receiver or an assignment for the benefit of creditors; (iv) making or sending a notice of an intended bulk sale; (v) the whole or partial suspension or liquidation of either of their usual business; (vi) failure to pay any tax when due; (vii) having made or making any misrepresentation to the Lender or Holder for the purpose of obtaining credit or an extension of credit; and, (ix) default with respect to the payment of money owed to Holder or any third person or entity pursuant to any agreement, lease (including but not limited to the real estate lease for Maker's principal place of business (the "Lease")) or other instrument beyond any period of grace provided therein, or default in the performance of any other term, condition or covenant contained in any document under which such obligation is created; and/or (J) Holder's reasonable and written determination, made in good faith, that the prospect of payment or other performance by Maker is materially impaired.

DocuSign Envelope ID: D5B341F1-E987-4DB9-92A5-47E709776B57

THIS A.M. COPY
The authoritative copy of this record is held at na2.docusign.net

**(5)** In the event of the occurrence of any default hereunder and written notice thereof, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently and: (A) at the option of Holder, all past, present and future payments required by this Note shall immediately become due and payable; (B) Maker and all Guarantors will jointly and severally pay to Holder such further amount as shall be sufficient to cover the cost and expense of enforcing this Note, including but not limited to: reasonable compensation to the attorneys of Holder which are hereby deemed to be 15% of the then balance due and owing on this Note, but in no event less than $1,000.00 nor more than that permitted under applicable law; costs and expenses directly or indirectly related to the Collateral (i.e., costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral); (C) Maker will, at request of Holder, properly crate and ship the Collateral, at all Maker's sole cost and expense, to any place within the Continental United States designated by Holder; (D) Holder may, at its sole and exclusive option, perform for Maker, any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note; (E) Holder shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Holder will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the Maker's notice address at least 7 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Holder and/or its representative may purchase all or part of the Collateral at a public or private sale; (F) at the option of Holder, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Holder receives payment in full; (G) Holder shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter the Premises peaceably by Holder's own means, breaking locks when necessary, or with legal process, in which case Maker agrees not to resist or interfere, and: (i) render the Collateral unusable without permanently diminishing the Collateral's value; and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner, protection, and/or removal; and/or (iii) designate an interim agent (the "Interim Tenant") to operate the Premises (if an Interim Tenant is so designated, pay Landlord all current rent and abide by all conditions of the Lease during the time it occupies the Premises and, during this time, Lender shall diligently attempt to locate a Replacement Tenant - see the following subsection for a definition of the term, "Replacement Tenant"); and/or (iv) appoint any other person or concern (the "Replacement Tenant") to take over and operate the Collateral in the Premises, in which case Maker, at Lender's option, shall be deemed to have assigned, with full recourse, the unexpired term of the Lease, including any option or renewal periods, to said Replacement Tenant, provided the Replacement Tenant agrees, in writing, to comply with terms and conditions identical to all of those in the Lease (hereinafter referred to as the "New Lease"), however no past due rentals shall be the obligations of the Replacement Tenant and Maker shall nevertheless remain liable to the Landlord for the prompt payment of all of the rentals and the performance of all of the provisions of both its Lease and the New Lease, and, to the extent that Lender pays any money to Landlord (i.e., rent or past due rent, assignment fee, administrative charge, etc.) to effectuate the Replacement Tenant's occupancy of the Premises, Maker shall reimburse Lender, within seven days of Lender's demand therefore, for any amount so paid to the Landlord by Lender and, to the extent any such sums are not so reimbursed by Maker to Lender, they shall be chargeable with interest computed at 15.9% per annum and added to the then balance due hereunder; and, (H) this Agreement shall constitute an irrevocable power of attorney from Maker to Lender authorizing Lender to assign the Lease, but Maker understands and agrees that Lender shall not, in any way, be liable for the failure of the Interim Tenant or the Replacement Tenant to pay rent to Landlord.

**(6)** To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: (A) Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; (B) Maker either owns the Premises or has a valid Lease therefor with the owner of the building in which the Premises are located. If the Premises are leased to Maker and the Lease is scheduled to expire prior to the payment in full of the Note, Maker must prove to Lender: (i) before Lender funds any portion of the Note, that Maker has the right to extend the term of the Lease to a date that is after the Note's maturity date and such right can be exercised at least 120 days prior to the Lease's scheduled termination; and, (ii) at least 90 days prior to the scheduled termination date of the Lease, that the Lease has been extended to a date that is after the Note's maturity date; (C) they have the power to execute this Note and deliver same to Lender; (D) The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party; (E) There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors; (F) Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; (G) they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; (H) Maker, to the best of its knowledge, is not in breach of, in default under, or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; and, (I) Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business.

**(7)** So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Holder such evidence of compliance as may be requested by Holder, to wit: (A) Maker will substantially and timely comply at all times with all its obligations associated with Maker's business at the Premises; (B) Maker agrees not to, without first obtaining the written consent of Holder: (i) cancel, surrender, modify, alter or assign the Lease, or sublet all or any part of the Premises; or, (ii) permit the cancellation, modification, alteration or assignment of the Lease, or the sublet of all or any part of the Premises; (C) Keep accurate and complete books and records and maintain same; (D) If requested by Holder, Maker shall forward to Holder or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end; (E) Maker will at all reasonable times permit the Holder to visit the Premises to inspect the Collateral, the Premises and Maker's books of account; (F) Obtain insurance policies for comprehensive property and fire insurance with extended coverage from an insurance company licensed to do business in the state where the Premises are located that has a minimum A.M. Best's rating of B+ or better, naming Holder as mortgagee and loss payee in an amount not less than the then current outstanding balance of this Note, covering the Premises and the Collateral; (G) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note; (H) Notify Holder of litigation involving amounts of $50,000.00 or more to which Maker and/or any Guarantor is a party by mailing to Holder, attention: President, by certified mail within five days of receipt thereof, a copy of the complaint, motion for judgment, or other such pleadings served on or by Maker or any Guarantor; (I) Maker will keep the Collateral, the Premises and other equipment and machinery therein in good repair, working order and condition, and will make all needful and proper repairs, renewals, replacements, additions and improvements thereto; (J) Maker will substantially and timely comply at all times with other agreements to which Maker is a party; (K) Maker will promptly pay and discharge, or cause to be paid and discharged, when due any and all income taxes, federal or otherwise, lawfully assessed and imposed upon Maker, and any and all lawful taxes, levies and assessments whatsoever upon Maker's property and every part thereof, provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such income taxes, federal or otherwise or such other taxes, rates, levies or assessments; (L) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral; (M) Allow Holder the right, without any Holder obligation, to make

DocuSign Envelope ID: D6B341E1-E987-4DB0-92A5-47E799576B57

THIS IS A COPY
This administrative copy of this record is held at na2.docusign.net

any or all payments to creditors (including but not limited to the Landlord of the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Holder's rights and Holder's security interest(s) and/or mortgages in the Collateral and Maker hereby authorizes Holder, at Maker's sole option, to contest any or all of such obligations of Maker and to collect 100% of any refunds or rebates arising from such contest(s); (N) Permit Holder to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Holder's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith; (O) Maker will strictly comply with requirements of any City, State, or Federal Law relating to the storage or use of hazardous materials; (P) Allow Holder the right, without any Holder obligation, to cure any failure to comply with any applicable Hazardous Waste Law; (Q) Maker will hold and save Holder free and harmless against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Holder due to Maker's and/or any Guarantor's default under this Agreement; and, (R) Maker will hold and save Holder free and harmless from any causes of action, claims, damages and liabilities of a contractual or tax nature due to the acts of Maker, and to provide counsel, at Maker's own expense, to defend Holder against any such claim.

**(8)** Except with the prior written consent of Holder: (A) Maker and the Guarantor(s) will not make any material change in organization or management or the manner in which Maker's business is conducted; (B) Maker will not become party to any merger or consolidation with any company or entity of any kind whatsoever, or sell substantially all of its assets, liquidate or dispose of its business; (C) Maker will not become a guarantor of obligations of any other person, firm, or entity; (D) Maker and the Guarantor(s) will not transfer, sell, lease or in any other manner convey any equitable, beneficial or legal interest in any of the Collateral to any person or other entity; (E) Maker and the Guarantor(s) will keep the Collateral at the Premises; (F) Maker will not create any new indebtedness, nor assume or guarantee or become or remain liable, directly or indirectly except in the normal course of Maker's business; (G) Maker and the Guarantor(s) will not create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral; (H) Maker will not borrow money in excess of $50,000.00 (the aforesaid restriction is in total, not per lender, but shall not apply to routine trade accounts payable incurred to obtain merchandise, inventory, parts, supplies or services obtained on open account); (I) Maker shall not make, create, incur or suffer or permit to be created or incurred or continue in existence any mortgage, pledge, lien, charge or other encumbrance or security interest of any kind upon or in any of Maker's property or assets now owned or hereafter acquired; (J) Maker and the Guarantor(s) will not permit any judgment obtained against Maker or the Guarantor(s) in an amount exceeding $24,999.99 to remain unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and, (K) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise.

**(9)** All parties to this Note and the following Irrevocable Guaranty: (A) expressly waive, to the extent permitted by law: presentment for payment; notice of dishonor; protest; notice of protest of this Note or the following Irrevocable Guaranty; other notice of any kind and all demands whatsoever; and, (B) agree not to make any claim against one another for any consequential damages.

**(10)** The Holder shall not by any act of delay, commission, failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Holder, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Holder of any right or remedy under the terms of this Note or the following Irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Holder would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Holder, and no course of dealing between Maker and/or Guarantors and Holder shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Holder. No notice to or demand on Maker or any Guarantor in any case shall entitle Maker or any such Guarantor to any other or further notice or demand in the same, similar other circumstances.

**(11)** Notwithstanding any provisions of this Note to the contrary: (A) the maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits, such excess payment shall be automatically credited to principal as a permitted partial prepayment without any prepayment fee being due with respect thereto; (B) any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law shall be void and deemed deleted therefrom without invalidating any other provision thereof; and, (C) time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below.

**(12)** This Note, the following Irrevocable Guaranty, and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Holder, whether or not arising out of or relating to this Note: (A) all parties to this Note and the following Irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches, and any set-off, counterclaim or cross-claim of any nature or description, other than actual payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender or Holder would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender or Holder in a separate action, such set-off, counterclaim or cross-claim may be interposed in any action brought by Lender or Holder); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, and/or Nassau, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter.

**(13)** Words used in this Note and the following Irrevocable Guaranty: (A) as singular shall be construed to mean the plural where necessary; and, (B) as plural shall be construed to mean the singular where necessary. The necessary grammatical changes required to make the provisions of this Note apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed. In the event that any word, sentence, paragraph or article of this Note is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted. The Uniform Commercial Code shall govern the rights, duties and remedies of the parties hereto.

**(14)** Maker agrees to pay all expenses incurred in connection with this Note including all title insurance premiums, appraisal costs, and recording charges. Maker further agrees to pay a non-refundable documentation fee to Lender in the amount of **$395.00** and a $150.00 Disposition charge at loan expiration, termination or default as reimbursement for all of Lender's expenses associated with the release and/or transfer of liens against the Collateral (but not the recording of such releases) and, where applicable, transfer of title to the Collateral.  The Lender and/or Holder may negotiate, assign and transfer this Agreement and any other document executed in connection herewith, and may deliver all or any part of any collateral security held in connection herewith to any transferee, who shall assume Lender's obligations hereunder and the Lender shall thereafter be forever released and discharged of and from any and all liability or responsibility to Maker respecting all liability or responsibility to them under this Agreement, and for and on account of any Collateral so delivered.

THIS IS A COPY

The authoritative copy of this record is held at na2.docusign.net

Maker may not transfer or assign this Note. Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same. By signing this Note and/or the Irrevocable Guaranty below, the undersigned, who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account. All terms and provisions of this Note shall be binding upon and shall inure to the benefit of, and be enforceable by the parties hereto, their respective legal representatives, successors and assigns. To the extent that any communications and notices are required by this Note, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other. Each of the parties hereto represents that the other parties, their agents, servants or employee have made no representation or statement whether oral or in writing, relating to or concerning this Note other than specifically set forth herein. This Note and the following Irrevocable Guaranty: (C) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (D) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is 6467236313.

**(15)** The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to either order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. LENDER MAKES NO WARRANTY OF TITLE TO ANY SOFTWARE, SOFTWARE LICENSES AND/OR THE RIGHT TO USE ANY SOFTWARE. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and manufacturer for a description of any such rights.

**Maker: TRIPLE L INDUSTRIES LLC**

by _____

Daniel Lee, Member

**Lender: Eastern Funding LLC**

by _Ana Lage_____

Ana Lage          Documentation Team Leader

Print Name and Title

**IRREVOCABLE GUARANTY**: Unless otherwise defined, words used herein shall have the same meaning as in the above Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby: (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise, whether arising by virtue of the Note or otherwise; (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender; (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker; and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of the Note and this Irrevocable Guaranty. The provisions hereof may not be changed orally, but only by a writing signed by Lender. The undersigned Guarantor(s) represent and warrant to Lender that: (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and, (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

_____

Daniel Lee                                                                50%

Notice Address: 1464 18th Ave, San Francisco CA 94122-3409          My Ownership
                                                                    Percentage of Maker

_____

Chou Yi Chao                                                          50%

Notice Address: 1464 18th Ave, San Francisco CA 94122-3409          My Ownership
                                                                    Percentage of Maker

**SCHEDULE "A" to**

**$311,386.00 SECURED PROMISSORY NOTE AND AGREEMENT**

**Maker: TRIPLE J INDUSTRIES LLC                Lender: Eastern Funding LLC**

**$101,386.00 of the $311,386.00 loan proceeds is being used for Maker's purchase of the following equipment:**

| Qty | Description |
| --- | --- |
| 9 | Wascomat/Electrolux 18 Lb. Washers |
| 2 | Wascomat/Electrolux 60 Lb. Washers |
| 11 | Coin Boxes |

Plus all accessions, additions and replacements thereto and all proceeds therefrom.

**Maker: TRIPLE J INDUSTRIES LLC** by _____

Daniel Lee, Member

**Lender: Eastern Funding LLC** by _____

Ana Lage

Print Name and Title: ___Ana Lage___      ___Documentation Team___ Leader

**SCHEDULE "B" to**

**$311,386.00 SECURED PROMISSORY NOTE AND AGREEMENT**
**Maker: TRIPLE J INDUSTRIES LLC          Lender: Eastern Funding LLC**

$ _101,000_____  **of the $311,386.00 loan proceeds is being used for Maker's purchase of the following equipment:**

**See Attached Equipment List**

Plus all accessions, additions and replacements thereto and all proceeds therefrom.

**Maker: TRIPLE J INDUSTRIES LLC** by _____

Daniel Lee, Member

**Lender: Eastern Funding LLC** by _____

Print Name and Title: _Ana Lage_____    Documentation Team Leader

Appl # 1025595                                                                                    06/06/2013

# TL CAFÉ AND LAUNDROMAT FF&E LIST

## CAFÉ

Beverage Air 5 foot undercounter 2 door refrigerator

Atosa 4 foot 2 door refrigerated sandwich prep table

True 2 door upright beverage refrigerator

La Pavoni 2 handle espresso machine

Mazzer electric espresso bean grinder

Curtis hot water tower

Fetco commercial coffee maker

Grindmaster commercial coffee grinder

2 Luxus commercial coffee urn/dispensers

2 stainless steel shelves 3 foot/6 foot

2 stainless steel tables 3 foot/5 foot

Stainless steel handwashing sink

Stainless steel prep washing station w/sprayer

Stainless steel 3 compartment sink w/sprayer

2 Hot spot portable cooking burners

Sharp 60 inch HD television

12 steel frame chairs and 5 steel frame bar stools

12 café tables

THIS IS CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE DOCUMENT IN FILE AT CAPITAL TRUST ESCROW.

BY

Waring Panini Grill

Krups Waffle Iron

All Led Signage and Menu Boards

All cutlery and kitchen utensils/accessories

Edgestar undercounter refrigerator for cold brew kegs, two 5 gallon kegs included

DATE: *11 – 26 – 18*                   DATE:

SELLER:                                         BUYER:

UGATZ ENTERPRISES, LLC              TRIPLE J INDUSTRIES, LLC

a California Limited Liability Company    a California Limited Liability Company


By: James Robert Centofanti, Member      By: Daniel Lee, Manager


                                                By: Chou Yi Chao, *MANAGER*

THIS IS CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE DOCUMENT IN FILE AT CAPITAL TRUST ESCROW.

BY

Page 2 of 2

TL CAFÉ AND LAUNDROMAT FF&E LIST

LAUNDROMAT

7 27 POUND CAPACITY SPEED QUEEN WASHERS

2 50 POUND CAPACITY SPEED QUEEN WASHERS

16 22 POUND CAPACITY WASCOMAT CROSSOVER WASHERS

2 47 POUND CAPACITY WASCOMAT WASHERS

1 62 POUND CAPACITY WASCOMAT WASHER

20 30 POUND CAPACITY ELECTROLUX DRYERS

9 LAUNDRY CARTS

1 VENDRITE WALL MOUNTED LAUNDRY PRODUCT DISPENSER  *$400*

DATE: *11 - 26 - 18*                    DATE: 11/27/2018

SELLER:                                 BUYER:

UGATZ ENTERPRISES, LLC                  TRIPLE J INDUSTRIES LLC

a California Limited Liability Company   a California Limited

                                        Liability Company

_James R. Centofanti_  MEMBER           _Daniel Lee_

By:   James Robert Centofanti, Member   By: Daniel Lee, Manager

                                        _Chou-Yi Chao_

THIS IS CERTIFIED TO BE A TRUE          By: Chou Yi Chao, Manager
AND CORRECT COPY OF THE DOCUMENT
IN FILE AT CAPITAL TRUST ESCROW.

BY _____

# EXHIBIT 13

DocuSign Envelope ID: 88FECA9D-DD46-4963-B987-459ECCE9CB63

THIS IS A COPY
This copy is a view of the Authoritative Copy held
by the designated custodian

This **Modification Agreement regarding Loan #12624-M1** (the "Loan") is between: (a) TRIPLE J INDUSTRIES LLC ("Maker"), whose notice address is 1464 18th Ave, San Francisco, CA  94122-3409; (b) Daniel Lee  (a "Guarantor"), whose notice address is 1464 18th Ave, San Francisco, CA 94122-3409; (c) Chou Yi Chao (a "Guarantor"), whose notice address is 1464 18th Ave, San Francisco, CA 94122-3409; (d) Eastern Funding LLC ("Lender"), whose notice address is 213 West 35th St., 10th Fl., New York, NY 10001.

Whereas: (a) Maker originally borrowed $311,386.00 from Lender pursuant to a promissory note (the "Note") and ancillary documents dated on or about 11/13/2018 (the Note and the ancillary documents shall hereinafter be collectively referred to as the "Loan Documents"); (b) the Guarantors jointly, severally and irrevocably guaranteed, to Lender, Maker's payment and performance of the Loan Documents; and, (c) Maker desires that the monthly payments required by the Note be changed and Lender, pursuant to the terms and conditions contained herein, consents thereto.

THEREFORE IT IS AGREED AMONGST THE PARTIES AS FOLLOWS:

1)  Unless otherwise defined in this Modification Agreement, capitalized terms used herein shall have the same meaning as is detailed in the Loan Documents.

2)  Maker and Guarantors agree that all of the terms and conditions of the Loan Documents not modified hereby shall remain in full force and effect as if fully set forth herein.

3)  This Modification Agreement shall be effective as of **04/01/2020** (the "Effective Date"), but if this Modification Agreement is not signed and returned to Lender by May 15th, 2020, this Modification Agreement shall have no force or effect and any previous offers made by Lender shall be null and void without further notification to Maker or Guarantors.

It is hereby acknowledged and agreed that, as of **04/01/2020** the balance due on the Note is $**262,560.98**, and the Note's initial annual rate is **8.50%**. Principal and interest shall be paid in **58** self-amortizing payments of principal and interest due and payable on 8/1/2020 12:00:00 AM and on the 1st day of each and every month thereafter, to and including **05/01/2025** (the maturity date) when any unpaid balance of principal and interest shall be due and payable. For monthly installments 1 through 60, each monthly payment of principal and interest shall be **$5,654.58**. On the due date of installment payment number 60, **02/01/2024**, the annual interest rate will adjust to Prime plus **3.25%**, fixed at this interest rate for all remaining consecutive monthly installments effective with monthly installment number 61, but under no circumstances will the annual interest rate ever be less than **8.50** ("Rate Floor"). Any increase in the Prime Rate would automatically increase the Rate Floor by the same amount as the increase in the Prime Rate. The term "Prime" as used herein refers to the Prime Rate published by the Wall Street Journal, but if the Wall Street Journal is not then being published, other major newspapers including electronic versions of newspapers. If Prime remains at the same rate that it is on the date hereof through the billing date of monthly installment number 60, all remaining consecutive monthly installments, starting with monthly installment number 61, shall each be **$5,654.58**. Each installment payment shall be applied first to the payment of interest on said principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Holder's discretion

4)  This Modification Agreement: (a) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (b) may be executed in: (i) two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act. For purposes hereof, Lender's email address is documents@easternfunding.com and Lender's facsimile transmission number is 6467236313.

5)  In any litigation between any of the parties hereto, whether or not related to the Note or the Loan Documents, all parties hereto expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient via the United States Postal Service, by both certified mail, return receipt requested and by first class mail.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**Maker: TRIPLE J INDUSTRIES LLC**          **Eastern Funding LLC**



by _____    May 28, 2020    by _____    June 11, 2020
  Daniel Lee, Member              Date       Print name Nancy Robles Executive VP Operations    /201
                                             And title _____    Date

X _____    May 28, 2020
  Daniel  Lee,  Member             Date

X _____    June 11, 2020
  Chou Yi Chao , Member            Date

[12624-M1]                                                    Revised 160523

# EXHIBIT 14



213 W 35th Street, 2nd Floor, New York, NY 10001

Phone: 877.819.1764 · Fax: 212.819.9764

**JENNIFER NG**
General Counsel
email: jennifer.ng@easternfunding.com

10/18/2024

TRIPLE J INDUSTRIES LLC
(Debtor)
1464 18th Ave
San Francisco, CA 94122

TRIPLE J INDUSTRIES LLC
(Debtor)
517 Ofarrell St
San Francisco, CA 94102

Chou Yi Chao
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Daniel Lee
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Sparkle Clean Laundromat LLC
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Re:    **NOTICE OF DEFAULT AND DEMAND FOR PAYMENT**
       **Loan #12624 (the "Loan") / Total Amount Due = $55,657.34**

**Attention!**

As a result of Eastern Funding LLC ("Eastern") not having timely received the required Loan payments, the Loan **IS NOW IN DEFAULT** and the Loan's unpaid principal has been accelerated.

**Eastern hereby demands that you immediately pay the Total Amount Due detailed above.** If we are not in receipt of such amount on or before close of business on 10/23/2024: (a) the Loan's unpaid principal balance will bear interest, until paid, at an annual rate of 15.9%; (b) you must immediately properly crate and ship the equipment that is the subject of the Loan to Eastern Funding (such return will not terminate your obligations, but the proceeds of the subsequent sale of same will be credited to the Loan's then unpaid balance); (c) you will be responsible for all of Eastern's collection expenses, including but not limited to reasonable attorney fees; and, (d) Eastern will initiate legal action against you in the litigation venue specifically listed in the Loan or as allowed by law.

BE ADVISED THAT: (i) the demands made herein are not intended to exclude any rights or remedies to which Eastern may be entitled by virtue of law, equity or contract; and, (ii) a judgment against you, once obtained, will be sent to local counsel for domestication and may result in foreclosure, levies against your real property and/or other assets.

You can avoid the unnecessary inconvenience and added expenses of a judgment by making prompt payment of the Total Amount Due. If you would like to discuss this matter, **please contact the Senior Loan Workout Specialist assigned to your account, Ishvinder Chawla, at (646) 723-6365 or ishvinder.chawla@easternfunding.com.**

Very truly yours,
Eastern Funding LLC

Jennifer Ng
General Counsel

JNG/ml

cc:     Jennifer S Lujan, Eastern Funding LLC

## AFFIDAVIT OF MAILING

State of New York, County of New York        ss.:

      The undersigned, being duly sworn under oath, deposes and says:

I am over the age of eighteen years, and on 10/18/2024 I mailed the following

### Notice of Default and Demand for Payment

a copy of which is attached, to the entities and/or individuals listed below, by depositing a copy enclosed in a postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service, in New York County, New York, addressed as is detailed below.

| | | |
|---|---|---|
| TRIPLE J INDUSTRIES LLC<br>(Debtor)<br>1464 18th Ave<br>San Francisco, CA 94122 | TRIPLE J INDUSTRIES LLC<br>(Debtor)<br>517 Ofarrell St<br>San Francisco, CA 94102 | Chou Yi Chao<br>(Guarantor)<br>1464 18th Ave<br>San Francisco, CA 94122 |
| Daniel Lee<br>(Guarantor)<br>1464 18th Ave<br>San Francisco, CA 94122 | Sparkle Clean Laundromat LLC<br>(Guarantor)<br>1464 18th Ave<br>San Francisco, CA 94122 | |

Date: 10/18/2024                    Affiant: _____
                                                          Mildred Leonidas

**NOTARY ACKNOWLEDGMENT.** STATE OF NEW YORK, COUNTY OF NEW YORK.  On 10/18/2024, before me, personally appeared **Mildred Leonidas**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person or entity upon or behalf of which the individual acted, executed the instrument.

> **JENNIFER NG**
> Notary Public, State of New York
> No. 02NG6331792
> Qualified in Queens County
> My Commission Expires 10/19/2027

# EXHIBIT 15



213 W 35th Street, 2nd Floor, New York, NY 10001

Phone: 877.819.1764 · Fax: 212.819.9764

**JENNIFER NG**
**General Counsel**
email: ennifer.ng_easternfunding.com

10/18/2024

Sparkle Clean Laundromat LLC          Daniel Lee
(Debtor)                              (Guarantor)
1464 18th Ave                          1464 18th Ave
San Francisco, CA 94122               San Francisco, CA 94122

**Re:   NOTICE OF DEFAULT AND DEMAND FOR PAYMENT**
       **Loan #13337 (the "Loan") / Total Amount Due = $688,906.04**

**Attention!**

As a result of Eastern Funding LLC ("Eastern") not having timely received the required Loan payments, the Loan **IS NOW IN DEFAULT** and the Loan's unpaid principal has been accelerated.

**Eastern hereby demands that you immediately pay the Total Amount Due detailed above.** If we are not in receipt of such amount on or before close of business on **10/23/2024**: (a) the Loan's unpaid principal balance will bear interest, until paid, at an annual rate of 15.9%; (b) you must immediately properly crate and ship the equipment that is the subject of the Loan to Eastern Funding (such return will not terminate your obligations, but the proceeds of the subsequent sale of same will be credited to the Loan's then unpaid balance); (c) you will be responsible for all of Eastern's collection expenses, including but not limited to reasonable attorney fees; and, (d) Eastern will initiate legal action against you in the litigation venue specifically listed in the Loan or as allowed by law.

BE ADVISED THAT: (i) the demands made herein are not intended to exclude any rights or remedies to which Eastern may be entitled by virtue of law, equity or contract; and, (ii) a judgment against you, once obtained, will be sent to local counsel for domestication and may result in foreclosure, levies against your real property and/or other assets.

You can avoid the unnecessary inconvenience and added expenses of a judgment by making prompt payment of the Total Amount Due. If you would like to discuss this matter, **please contact the Senior Loan Workout Specialist assigned to your account, Ishvinder Chawla, at (646) 723-6365 or ishvinder.chawla@easternfunding.com.**

Very truly yours,
Eastern Funding LLC

Jennifer Ng
General Counsel

JNG/ml

cc:    Jennifer S Lujan, Eastern Funding LLC

## AFFIDAVIT OF MAILING

State of New York, County of New York        ss.:

      The undersigned, being duly sworn under oath, deposes and says:

I am over the age of eighteen years, and on 10/18/2024 I mailed the following

### Notice of Default and Demand for Payment

a copy of which is attached, to the entities and/or individuals listed below, by depositing a copy enclosed in a postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service, in New York County, New York, addressed as is detailed below.

| | |
|---|---|
| Sparkle Clean Laundromat LLC | Daniel Lee |
| (Debtor) | (Guarantor) |
| 1464 18th Ave | 1464 18th Ave |
| San Francisco, CA 94122 | San Francisco, CA 94122 |

Date: 10/18/2024            Affiant: _____

Mildred Leonidas

**NOTARY ACKNOWLEDGMENT.** STATE OF NEW YORK, COUNTY OF NEW YORK.  On 10/18/2024, before me, personally appeared **Mildred Leonidas**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person or entity upon or behalf of which the individual acted, executed the instrument.

**JENNIFER NG**
Notary Public, State of New York
No. 02NG6331792
Qualified in Queens County
My Commission Expires 10/19/2027

# EXHIBIT 16



213 W 35th Street, 2nd Floor, New York, NY 10001

Phone: 877.819.1764 · Fax: 212.819.9764

**JENNIFER NG**
**General Counsel**
email: ennifer.ng   easternfunding.com

10/18/2024

TRIPLE J LAUNDROMAT LLC          Daniel Lee                    Chou Yi Chao
(Debtor)                         (Guarantor)                   (Guarantor)
14278 E 14th St, Ste A           1464 18th Ave                 1464 18th Ave
San Leandro, CA 94578            San Francisco, CA 94122       San Francisco, CA 94122

Sparkle Clean Laundromat LLC
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Re:    **NOTICE OF DEFAULT AND DEMAND FOR PAYMENT**
       **Loan #12958 (the "Loan") / Total Amount Due = $57,192.88**

**Attention!**

As a result of Eastern Funding LLC ("Eastern") not having timely received the required Loan payments under Eastern's Loans 12624, 14084, and 13337, and this Loan being cross collateralized with Eastern's Loans 12624, 14084, and 13337, the above-referenced Loan **IS NOW IN DEFAULT** and the Loan's unpaid principal has been accelerated.

**Eastern hereby demands that you immediately pay the Total Amount Due detailed above.** If we are not in receipt of such amount on or before close of business on **10/23/2024**: (a) the Loan's unpaid principal balance will bear interest, until paid, at an annual rate of 15.9%; (b) you must immediately properly crate and ship the equipment that is the subject of the Loan to Eastern Funding (such return will not terminate your obligations, but the proceeds of the subsequent sale of same will be credited to the Loan's then unpaid balance); (c) you will be responsible for all of Eastern's collection expenses, including but not limited to reasonable attorney fees; and, (d) Eastern will initiate legal action against you in the litigation venue specifically listed in the Loan or as allowed by law.

BE ADVISED THAT: (i) the demands made herein are not intended to exclude any rights or remedies to which Eastern may be entitled by virtue of law, equity or contract; and, (ii) a judgment against you, once obtained, will be sent to local counsel for domestication and may result in foreclosure, levies against your real property and/or other assets.

You can avoid the unnecessary inconvenience and added expenses of a judgment by making prompt payment of the Total Amount Due. If you would like to discuss this matter, **please contact the Senior Loan Workout Specialist assigned to your account, Ishvinder Chawla, at (646) 723-6365 or ishvinder.chawla@easternfunding.com.**

Very truly yours,
Eastern Funding LLC

Jennifer Ng
General Counsel

JNG/ml

cc:    Jennifer S Lujan, Eastern Funding LLC

# AFFIDAVIT OF MAILING

State of New York, County of New York      ss.:

The undersigned, being duly sworn under oath, deposes and says:

I am over the age of eighteen years, and on 10/18/2024 I mailed the following

## Notice of Default and Demand for Payment

a copy of which is attached, to the entities and/or individuals listed below, by depositing a copy enclosed in a postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service, in New York County, New York, addressed as is detailed below.

TRIPLE J INDUSTRIES LLC            Daniel Lee                          Chou Yi Chao
(Debtor)                           (Guarantor)                         (Guarantor)
1464 18th Ave                      1464 18th Ave                       1464 18th Ave
San Francisco, CA 94122            San Francisco, CA 94122             San Francisco, CA 94122

Sparkle Clean Laundromat LLC
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Date: 10/18/2024                   Affiant: _____
                                            Mildred Leonidas

**NOTARY ACKNOWLEDGMENT.** STATE OF NEW YORK, COUNTY OF NEW YORK.   On 10/18/2024, before me, personally appeared **Mildred Leonidas**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person or entity upon or behalf of which the individual acted, executed the instrument.

**JENNIFER NG**
Notary Public, State of New York
No. 02NG6331792
Qualified in Queens County
My Commission Expires 10/19/2027

# EXHIBIT 17



213 W 35th Street, 2nd Floor, New York, NY 10001

Phone: 877.819.1764 · Fax: 212.819.9764

JENNIFER NG
General Counsel
email: ennifer.ng   easternfunding.com

10/18/2024

TRIPLE J INDUSTRIES LLC
(Debtor)
1464 18th Ave
San Francisco, CA 94122

TRIPLE J INDUSTRIES LLC
(Debtor)
517 Ofarrell St
San Francisco, CA 94102

Daniel Lee
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Chou Yi Chao
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

Sparkle Clean Laundromat LLC
(Guarantor)
1464 18th Ave
San Francisco, CA 94122

TRIPLE J LAUNDROMAT LLC
(Guarantor)
14278 E 14th St, Ste A
San Leandro, CA 94578

Re:  **NOTICE OF DEFAULT AND DEMAND FOR PAYMENT**
**Loan #14084 (the "Loan") / Total Amount Due = $283,769.35**

**Attention!**

As a result of Eastern Funding LLC ("Eastern") not having timely received the required Loan payments, the Loan **IS NOW IN DEFAULT** and the Loan's unpaid principal has been accelerated.

**Eastern hereby demands that you immediately pay the Total Amount Due detailed above.** If we are not in receipt of such amount on or before close of business on <u>10/23/2024</u>: (a) the Loan's unpaid principal balance will bear interest, until paid, at an annual rate of 15.9%; (b) you must immediately properly crate and ship the equipment that is the subject of the Loan to Eastern Funding (such return will not terminate your obligations, but the proceeds of the subsequent sale of same will be credited to the Loan's then unpaid balance); (c) you will be responsible for all of Eastern's collection expenses, including but not limited to reasonable attorney fees; and, (d) Eastern will initiate legal action against you in the litigation venue specifically listed in the Loan or as allowed by law.

BE ADVISED THAT: (i) the demands made herein are not intended to exclude any rights or remedies to which Eastern may be entitled by virtue of law, equity or contract; and, (ii) a judgment against you, once obtained, will be sent to local counsel for domestication and may result in foreclosure, levies against your real property and/or other assets.

You can avoid the unnecessary inconvenience and added expenses of a judgment by making prompt payment of the Total Amount Due. If you would like to discuss this matter, **please contact the Senior Loan Workout Specialist assigned to your account, Ishvinder Chawla, at (646) 723-6365 or ishvinder.chawla@easternfunding.com.**

Very truly yours,
Eastern Funding LLC

Jennifer Ng
General Counsel

JNG/ml

cc:    Jennifer S Lujan, Eastern Funding LLC

# AFFIDAVIT OF MAILING

State of New York, County of New York        ss.:

The undersigned, being duly sworn under oath, deposes and says:

I am over the age of eighteen years, and on 10/18/2024 I mailed the following

## Notice of Default and Demand for Payment

a copy of which is attached, to the entities and/or individuals listed below, by depositing a copy enclosed in a postpaid wrapper in an official depository under the exclusive care and custody of the United States Postal Service, in New York County, New York, addressed as is detailed below.

| | | |
|---|---|---|
| TRIPLE J INDUSTRIES LLC<br>(Debtor)<br>1464 18th Ave<br>San Francisco, CA 94122 | TRIPLE J INDUSTRIES LLC<br>(Debtor)<br>517 Ofarrell St<br>San Francisco, CA 94102 | Daniel Lee<br>(Guarantor)<br>1464 18th Ave<br>San Francisco, CA 94122 |
| Chou Yi Chao<br>(Guarantor)<br>1464 18th Ave<br>San Francisco, CA 94122 | Sparkle Clean Laundromat LLC<br>(Guarantor)<br>1464 18th Ave<br>San Francisco, CA 94122 | TRIPLE J LAUNDROMAT LLC<br>(Guarantor)<br>14278 E 14th St, Ste A<br>San Leandro, CA 94578 |

Date: 10/18/2024                Affiant: _____
                                                    Mildred Leonidas

**NOTARY ACKNOWLEDGMENT.** STATE OF NEW YORK, COUNTY OF NEW YORK.   On 10/18/2024, before me, personally appeared **Mildred Leonidas**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person or entity upon or behalf of which the individual acted, executed the instrument.

**JENNIFER NG**
Notary Public, State of New York
No. 02NG6331792
Qualified in Queens County
My Commission Expires 10/19/2027

# VERIFICATION

**STATE OF NEW YORK, COUNTY OF NEW YORK**

I have read the foregoing **COMPLAINT** and know its contents.

☐     I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒     I am VP of Risk Management of EASTERN FUNDING LLC, a subsidiary of Brookline Bank, a Delaware limited liability company, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

         ☒     I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

         ☐     The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am one of the attorneys for EASTERN FUNDING LLC, a subsidiary of Brookline Bank, a Delaware limited liability company, a party to this action. Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on January 25, 2025, at New York, New York.

_Karen Tennant_____          _Karen Tennant_____
Print Name of Signatory                 Signature

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000