UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EASTERN FUNDING LLC, A SUBSIDIARY OF BROOKLINE BANK, A DELAWARE LIMITED LIABILITY COMPANY,, <br><br> Plaintiff, <br><br> v. <br><br> TRIPLE J INDUSTRIES, A CALIFORNIA LIMITED LIABILITY COMPANY, et al., <br><br> Defendants. | Case No. 25-cv-02228-HSG <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 41 |

Pending before the Court is Plaintiff's motion for summary judgment. Dkt. No. 41 ("Mot."); Dkt. No. 48 ("Opp."); Dkt. No. 49 ("Reply"). The Court held a hearing on the motion. Dkt No. 62.[1] For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I. **BACKGROUND**[2]

Plaintiff Eastern Funding LLC brought this action against Defendants Triple J Industries

---

[1] Defendants' counsel did not attend the hearing. The Court issued an order to show cause as to why Defendants' counsel should not be sanctioned. Dkt. No. 61. The Court **DISCHARGES** the order to show cause in light of counsel's explanation that he mistakenly joined the wrong Zoom call and "has implemented a practice of confirming connection details with the courtroom deputy in advance whenever remote appearance instructions refer to prior docket entries or recurring Zoom sessions." Dkt. No. 63. That said, counsel did not attempt to contact the Court or Plaintiff's counsel at any point while waiting in the Zoom room for approximately an hour and a half after the scheduled hearing time. The Court trusts and expects that counsel will act with greater diligence in the future, to include the basic step of reading and following the directions in the relevant docket entry.

[2] At this stage, the Court views the record in the light most favorable to Defendants, and makes all reasonable inferences in their favor.

LLC, Triple J Laundromat LLC, Sparkle Clean Laundromat LLC, Daniel Lee, and Chou Yi Chao for amounts due under four loan agreements. *See* Dkt. No. 1 ("Compl.") ¶¶ 10–29. For each loan, Plaintiff brings a claim for breach of secured promissory notes and agreements and a claim for breach of guaranties. *See id.* ¶¶ 30–54. Plaintiff also brings claims for conversion and claim and delivery against all Defendants. *Id.* ¶¶ 55–63.

In December 2025, Plaintiff moved for summary judgment. After the hearing, Plaintiff filed a notice of automatic stay as to Defendants Chao and Lee, who filed for bankruptcy in March 2026. *See* Dkt. No. 64.

## II.    LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation omitted). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

2

(1986).

## III.    DISCUSSION[3]

Plaintiff seeks summary judgment on its claims for breach of loan, breach of guaranty, and claim and delivery.  Mot. at 16–17.  Plaintiff seeks dismissal of its claim for conversion.  *Id.* at 17.

### a.    Breach of Loan and Breach of Guaranty Claims (Claims One to Eight)

The elements of a breach of contract claim under California law are: "(1) [a] contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom."  *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (quotation omitted).  The elements of a breach of guaranty claim are: "(1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty."  *Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (2011).[4]

The Court finds that Plaintiff has adequately introduced evidence establishing each element of its breach of contract and breach of guaranty claims for Loans One, Two, and Four:

- **Loan One**: Plaintiff introduces evidence showing it loaned $321,733.20 to Triple J Industries on August 7, 2020.  Dkt. No. 41-2 ("Tennant Decl.") ¶ 6, Ex. 1.[5]  On that

---

[3] Plaintiff asks the Court to take judicial notice of Plaintiff's complaint and Defendants' answer. Dkt. No. 41-3 (request).  The Court does not need to take judicial notice of entries on its own docket.  *See Colodney v. Orr*, No. EDCV 14-01973-VAP, 2015 WL 1636818, at *1 n.4 (C.D. Cal. Apr. 9, 2015), *aff'd*, 651 F. App'x 630 (9th Cir. 2016); *Pugh v. Metro. Life Ins. Co.*, No. 18-CV-01506-YGR, 2019 WL 484279, at *1 n.5 (N.D. Cal. Feb. 7, 2019).  Given this, the Court **DENIES** this request.

[4] As Plaintiff observes, there is a New York choice-of-law provision in each of the loan contracts (the authenticity and existence of which are not in dispute).  *See* Dkt. No. 41-2, Ex. 1 at 18, Ex. 4 at 29, Ex. 8 at 45, Ex. 11 at 56.  Neither party appears to be invoking the choice-of-law provisions here: Plaintiff specifically invokes its rights under California law, and Defendants raise defenses under California law.  *See* Mot. at 19–20; Opp. at 3.  Nor have the parties invoked New York law at any other point in the litigation.  As a result, the Court will apply California state law.  *Cf. Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (applying California law despite Massachusetts choice-of-law provision because "the parties through their course of conduct have waived the provision of the agreement that specifies the application of Massachusetts law").

[5] Plaintiff introduces testimony and documents from its Vice President, Karen Tennant.  Tennant Decl. ¶ 1.  She testifies that she is "one of the persons at Eastern Funding charged with responsibility for the administration, supervision, and monitoring and collection of the obligations" due by the Defendants.  *Id.* ¶ 2.  She also testifies that she is a custodian for Plaintiff's records and outlines the procedures it uses for maintaining those records.  *Id.* ¶ 4.  Defendants do not object to this evidence.

3

same day, Triple J Industries signed a secured promissory note and agreement to pay back the loan with interest in 117 consecutive monthly installments beginning on September 1, 2020. *Id.* ¶¶ 6–7, Ex. 1. In that agreement, Triple J Industries also granted Plaintiff a "purchase money security interest" in equipment and goods listed in the Schedule A form as collateral. *Id.* ¶ 9, Ex. 1 at 20; *see also id.*, Ex. 2 (UCC Financing Statements for collateral). That agreement also contained an irrevocable guaranty, signed by Defendants Lee and Chao. *Id.* ¶ 12, Ex. 1 at 19. Triple J Industries began failing to make monthly payments in October 2024, *id.* ¶ 36, and Plaintiff sent letters to all Defendants demanding payment and delivery of collateral shortly thereafter, *id.*, Ex. 13 at 73. $278,548.25 is now outstanding on the loan. *Id.* ¶ 38(a); *see also id.*, Ex. 17 (payment history).

- **Loan Two**: Plaintiff introduces evidence showing it loaned $947,699.66 to Sparkle Clean on September 3, 2019. *Id.* ¶ 17, Ex. 4. On that same day, Sparkle Clean signed a secured promissory note and agreement to pay back the loan with interest in 108 consecutive monthly installments beginning on October 10, 2019. *Id.* ¶¶ 17–18, Ex. 4. In that agreement, Sparkle Clean also granted Plaintiff a security interest in various physical collateral and $12,460.99 in cash collateral. *Id.* ¶ 19, Ex. 4 at 27; *see also id.*, Ex. 6 (UCC Financing Statements for collateral). That agreement also contained an irrevocable guaranty, signed by Defendant Lee. *Id.* ¶ 21, Ex. 4 at 30. The parties entered into a modification agreement on March 11, 2020, further identifying the remaining balance and interest rates. *Id.* ¶¶ 22–23, Ex. 7. Sparkle Clean began failing to make monthly payments in October 2024, *id.* ¶ 36, and Plaintiff sent letters to Sparkle Clean and Defendant Lee demanding payment and delivery of collateral shortly thereafter, *id.*, Ex. 13 at 69. $676,802.49 is now outstanding on the loan. *Id.* ¶ 38(b); *see also id.*, Ex. 16 (payment history).[6]

---

[6] Of this total, $165 comes from an "inspection fee." Tennant Decl. ¶ 38(b). The Court could not find any other reference to this fee in the record. The Court twice asked Plaintiff to explain what this fee was, Dkt. Nos. 65, 67, and Plaintiff twice failed to explain the fee, Dkt. Nos. 66, 68. However, Plaintiff agreed to waive "any Inspection Fees . . . so that Judgment can be entered."

- **Loan Four**: Plaintiff introduces evidence showing it loaned $311,386.00 to Triple J Industries on November 13, 2018. *Id.* ¶ 30, Ex. 11. On that same day, Triple J Industries signed a secured promissory note and agreement to pay back the loan with interest in 72 consecutive monthly installments beginning on March 1, 2019. *Id.* ¶¶ 30–31, Ex. 11. In that agreement, Triple J Industries also granted Plaintiff a "purchase money security interest" in equipment and goods listed in the Schedule A and B forms as collateral. *Id.* ¶ 32, Ex. 11 at 58–62. That agreement also contained an irrevocable guaranty, signed by Defendants Lee and Chao. *Id.* ¶ 33, Ex. 11 at 57. The parties entered into a modification agreement effective as of April 1, 2020, further identifying the remaining balance and interest rates. *Id.* ¶¶ 34–35, Ex. 12. Triple J Industries began failing to make monthly payments in September 2024, *id.* ¶ 36, and Plaintiff sent letters to Triple J Industries, Sparkle Clean, and individual Defendants demanding payment and delivery of collateral shortly thereafter, *id.*, Ex. 13 at 67. $69,343.65 is now outstanding on the loan. *Id.* ¶ 38(d); *see also id.*, Ex. 14 (payment history).

- Finally, Plaintiff introduces evidence that all five Defendants signed an Agreement of Cross Default, Collateral Security, and Guaranty on August 13, 2020, where each primary obligor agreed to "absolutely, unconditionally, irrevocably, jointly and severally guarantee[] ALL of the Obligations of ALL of the other Primary Obligors," and agreed that "[a]ny default by any Primary Obligor in the performance of its/his/her Obligations shall be deemed to be a default by ALL of the Primary Obligors in All of their respective Obligations." *Id.* ¶¶ 13–16, Ex. 3 at 24.

From this evidence, the Court concludes that Plaintiff has shown (1) the existence of each of these loan and guaranty agreements; (2) that it performed its obligations under each agreement; (3) that the corporate Defendant borrowers defaulted on each of the loan agreements and breached their obligations; and (4) there are outstanding loan repayments caused by the breach which

Dkt. No. 68 ¶ 6. As a result, the Court has subtracted out $165 from the amount listed as due in Plaintiff's motion. Tennant Decl. ¶ 38(b) ($676,967.49).

5

neither the borrowers nor any of the guarantor Defendants have repaid.

As a result, the burden shifts to Defendants to show a genuine dispute of material fact. But Defendants do not introduce their own evidence or contest any of Plaintiff's evidence. In fact, Defendants' answer admits the existence of the loans, the details of the loan agreements, the existence of the collateral for each of the loans, the existence of the cross-collateral agreement, and the personal guaranties for each loan. *See* Dkt. No. 27 at 2 (admitting Compl. ¶¶ 10–13, 15–18, 20–28)[7]; *cf. Jade Fashion & Co. v. Harkham Indus., Inc.*, 229 Cal. App. 4th 635, 645 (2014) (affirming grant of summary judgment on similarly undisputed facts for breach of contract claim); *Indymac Bank, F.S.B v. Aryana/Olive Grove Land Dev., LLC*, No. EDCV 12-01494-VAP (DTBX), 2013 WL 12129624, at *7 (C.D. Cal. Sept. 4, 2013), *aff'd*, 636 F. App'x 704 (9th Cir. 2016) (granting summary judgment where defendant did "not dispute that the Guaranty was valid, nor [did] he present admissible evidence to challenge the validity of the Guaranty").

Instead, Defendants argue that "[u]nder California law, a lender's failure to mitigate damages precludes recovery of avoidable losses," and "[w]hether Plaintiff made reasonable efforts to mitigate damages is a factual issue that cannot be resolved on summary judgment." Opp. at 2–3. While Defendants' exact theory is somewhat unclear, it appears that they are claiming that Plaintiff could have sold or otherwise disposed of Defendants' laundromats to mitigate its damages. Opp. at 2. "[A] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) (quotation omitted). But Defendants have not put forward any evidence that Plaintiff failed to mitigate its damages (or any evidence at all), and they rely only on unsupported and vague attorney argument in their opposition.[8] This does not create a genuine

_____

[7] Defendants also admit that "Plaintiff has performed all conditions, covenants and promises on its part required to be performed in accordance with the terms of Note 3, the Guarantees, the Cross-Collateral Agreement and the Modification Agreement." *See* Dkt. No. 27 at 2 (admitting Compl. ¶ 24). This may have been a mistake, as Defendants did not admit the same allegation for the other three loans, though they do not dispute the related evidence here.

[8] The Court understands Defendants to be referencing potential mitigation opportunities discussed in settlement negotiations. As Plaintiff rightly points out, Reply at 4, it's not clear if this would be

6

dispute of material fact as to damages.

Next, Defendants claim that "Plaintiff's damages calculations depend on unresolved questions of mitigation, interest accrual, collateral value and commercial reasonableness." Opp. at 3. But Defendants have not introduced any evidence disputing any of the damages calculations, nor have they explained why the collateral value or commercial reasonableness is relevant. Similarly, Defendants claim that "Plaintiff seeks summary judgment for specific dollar amounts while admitting it does not know the full extent of its damages" under its conversion claim and thus cannot obtain summary judgment. Opp. at 3. But the damages for the conversion claim relate to the value of the collateral, which has no relationship to the damages sought under Plaintiff's breach of loan claims.[9]

However, Plaintiff's own evidence creates a genuine issue of material fact as to the damages due under Loan Three. Plaintiff introduces evidence showing it loaned $170,798.16 to Triple J Laundromat on April 2, 2019. Tennant Decl. ¶ 24, Ex. 8. On that same day, Triple J Laundromat signed a secured promissory note and agreement to pay back the loan with interest in 84 consecutive monthly installments beginning on April 15, 2019. *Id.* ¶¶ 24–25, Ex. 8. In that agreement, Triple J Laundromat also granted Plaintiff a "purchase money security interest" in equipment and goods listed in the Schedule A form as collateral, along with $2,726.32 in cash collateral. *Id.* ¶ 26, Ex. 8 at 43, 47; *see also id.*, Ex. 9 (UCC Financing Statements for collateral). That agreement also contained an irrevocable guaranty, signed by Defendants Lee and Chao. *Id.*

admissible evidence. *See Emelianenko v. Affliction Clothing*, No. 09-07865 MMM (MLGX), 2011 WL 13176755, at *18–*19 (C.D. Cal. July 28, 2011) (addressing this apparently unresolved question).

[9] Defendants also argue that summary judgment is premature because some discovery has not yet been completed, and they ask the Court to deny or continue the motion pursuant to Federal Rule of Civil Procedure 56(d). Opp. at 3–4. A party requesting a continuance for additional discovery must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Defendants state that they generally seek discovery relating to "Plaintiff's mitigation efforts," "[c]ommercial reasonableness of disposition," and "[a]ccuracy of damages calculations." Opp. at 4. They did not submit an affidavit or declaration, they have not identified specific facts sought, and they have not explained how these general topics are essential to summary judgment. Accordingly, the Court **DENIES** Defendants' request.

United States District Court
Northern District of California

¶ 28, Ex. 8 at 46.  The parties entered into a modification agreement effective as of March 15, 2020, further identifying the remaining balance and interest rates.  *Id.* ¶¶ 28–29, Ex. 10.  Triple J Laundromat began failing to make monthly payments in December 2024, *id.* ¶ 36, and Plaintiff sent letters to Triple J Laundromat, Sparkle Clean, and the individual Defendants demanding payment and delivery of collateral shortly thereafter, *id.*, Ex. 13 at 71.

Plaintiff claims that $59,191.95 is now outstanding on the loan.  *Id.* ¶ 38(c).  However, it calculates that figure using a principal balance of $49,885.04, *id.*, even though the payment history suggests the outstanding principal balance is only $47,448.20, *id.*, Ex. 15 (payment history).  The Court ordered Plaintiff to explain the discrepancy and identify the correct principal balance and accrued unpaid interest amount.  Dkt. No. 65.  In response, Plaintiff's counsel states that the principal balance due when Ms. Tennant executed her declaration on December 18, 2025, was $49,885.04, as stated in the original declaration.  Dkt. No. 68 ¶ 8.  Counsel claims that the discrepancy arose because a final payment was subsequently applied to the outstanding balance on January 15, 2026, which reduced the principal balance to $47,448.20.  *Id.*  As a result, counsel represents that the correct accrued unpaid interest amount is $3,535.00, not $9,126.91.  *Id.* ¶ 9.

These claims contradict the already-unclear record, creating a genuine issue as to the principal balance and accrued unpaid interest amount for Loan Three.  First, counsel's claim that the final payment was applied on January 15, 2026, contradicts the payment history, which shows that the final payment reduced the principal balance to $47,448.20 on January 15, **2025**.  Ex. 15 at 81.  It also doesn't make sense, since Plaintiff's motion for summary judgment—which included both the contradictory payment history and the declaration—was filed on December 23, 2025.  Second, counsel's significantly revised interest amount relies on this contradicted fact and apparently uses a calculation method different from the one used by Ms. Tennant in the original declaration.  To arrive at the revised interest figure, Plaintiff's counsel took "the remaining 18 payments . . . due on the loan" and "discount[ed] the payments to present value."  Dkt. No. 68 ¶ 9.  This present-value approach is not described anywhere elsewhere in the record and appears to be at odds with the precise interest rate calculations described in Ms. Tennant's prior declaration.  *See*

Tennant Decl. ¶¶ 24–29, 37.[10]  This apparent change in calculation methods is reflected in the significant 61% decrease in the interest amount, despite the fact that the principal amount was decreased by only about 5%, and (according to Plaintiff) only for the period of time after January 15, 2026.

Accordingly, the Court **GRANTS** Plaintiff's motion as to Claims One, Two, Three, Four, Seven, and Eight against Defendants Triple J Industries, Triple J Laundromat, and Sparkle Clean. The Court **DENIES** Plaintiff's motion as to Claims Five and Six against these corporate Defendants.  The Court further **STAYS** the case against Defendants Lee and Chou and **DENIES** the motion as to the Claims Two, Four, Six, and Eight against these individual Defendants in light of the automatic stay triggered when they filed for bankruptcy.  *See Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017); 11 U.S.C. § 362(a).

### b.  Claim and Delivery (Claim Nine)

Plaintiff seeks "Judgment for Claim and Delivery with respect to the Collateral and a Judgment for possession of the Collateral."  Compl. ¶ 57.  Under California law, "[c]laim and delivery is a remedy by which a party with a superior right to a specific item of personal property (created, most commonly, by a contractual lien) may recover possession of that specific property before judgment."  *Santa Clara Valley Water Dist. v. Eisenberg*, 117 Cal. App. 5th 714, 726 (2025), *as modified* (Jan. 30, 2026) (quotation omitted).  "To obtain possession of tangible personal property through a writ of possession, the plaintiff must establish, inter alia, the basis for its claim, that it is entitled to possession of the property, and the defendant is wrongfully detaining the property."  *Id.* (citing Cal. Civ. Proc. Code § 512.010(b)).

However, claim and delivery is a "a provisional remedy which affords the plaintiff the right of immediate possession of the property involved in the action for specific recovery of the property without waiting for trial and judgment."  *Am. Mach. & Foundry Co. v. Pitchess*, 262 Cal. App. 2d 490, 493 (1968).  "Thus, an action for claim and delivery is 'not an independent cause of action.'"  *Balboa Cap. Corp. v. Wall St. Physician, PLLC*, No. 8:22-CV-00009-JVS-DFMX, 2023

---

[10] It also appears to ignore any interest accrued after the default date.  *See* Tennant Decl. ¶ 37.

United States District Court
Northern District of California

WL 5503083, at *4 (C.D. Cal. Mar. 2, 2023) (quoting *Teed v. Chen*, No. 22-CV-02862-CRB, 2022 WL 16839496, at *10 (N.D. Cal. Nov. 9, 2022)); *see also* 6 Witkin, California Procedure § 238 (6th ed. 2026) ("The provisional remedy [of claim and delivery] cannot be employed independently, but only in the action [for specific recovery].").

California courts are not clear about what the correct cause of action should be for this type of claim. Some courts "use the term 'claim and delivery' indiscriminately to refer to both the action and the provisional remedy," *Borges v. Farrar*, No. F040810, 2003 WL 22725357, at *5 (Cal. Ct. App. Nov. 20, 2003) (quoting Witkin § 238), which might explain Plaintiff's confusion here.[11] And "the underlying action incorporates to some degree the three common law forms of action available against a defendant who has committed the tort of conversion of personal property": replevin, detinue, and trover and conversion. *Id.* In some cases, "the action itself is termed . . . simply one for conversion." *Id.*

Some courts have suggested that plaintiffs can bring a statutory cause of action for specific recovery under California Code of Civil Procedure § 667, which states that "[i]n an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention." *See Irving Nelkin & Co. v. S. Beverly Hills Wilshire Jewelry & Loan*, 129 Cal. App. 4th 692, 698 n.4 (2005) (taking this position); *Borges*, 2003 WL 22725357, at *5 (same); *see also* Cal. Civ. Proc. Code § 627 (assessing the measure of damages in "an action for the recovery of specific personal property"). But the statute seemingly defines the remedy available for actions to recover possession, not the action itself.

Another court has suggested that the "common law writ of replevin is the equivalent of the 'action for the recovery of specific personal property' referred to in Code of Civil Procedure section 667," and states that "the common law forms of action named replevin, detinue and trover are addressed by the tort of conversion of tangible personal property." *Foster v. Sexton*, 61 Cal. App. 5th 998, 1020 (2021); *see also Borges*, 2003 WL 22725357, at *5 (noting this view).

---

[11] This case is unpublished, but the Court uses it to illustrate the differing views regarding this cause of action in state court.

United States District Court
Northern District of California

Witkin's guide to California Procedure seems to adopt this approach as well, suggesting that this action is a form of conversion, but one that is independently known as "specific recovery":

> The wrongful exercise of dominion over the personal property of another, whether it involves wrongful taking, or lawful taking and wrongful withholding, constitutes the tort of conversion. The injured party may elect either of two main types of actions: (a) specific recovery of the property, with damages, in a proper case, for its detention . . . or (b) damages for conversion based on the value of the property taken . . . . The first action, insofar as it needs a label or designation, might be termed "specific recovery of personal property."

5 Witkin, California Procedure § 689 (6th ed. 2026)[12]; *cf. Christofferson v. All Pure Pool Serv. of Cent. Cal., Inc.*, No. 1:18-CV-01370-AWI-SAB, 2020 WL 3249323, at *14 & n.21 (E.D. Cal. June 16, 2020), *report and recommendation adopted*, 2020 WL 3819413 (E.D. Cal. July 8, 2020) (grappling with these issues).

While the exact contours of this label are somewhat hazy, the Court will construe Plaintiff's claim as a cause of action for "specific recovery," even though it is not formally pleaded as such. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 782 (9th Cir. 2012) (instructing courts to "focus on the substance of the plaintiffs' claims, not the plaintiffs' labels"). Whether this is a variant of conversion, a product of California statutory law, or something else, it's clear that California courts permit recovery under this label separate and apart from a traditional conversion claim for damages. *See Washington v. Neloms*, No. B294088, 2020 WL 614816, at *1 (Cal. Ct. App. Feb. 10, 2020) (unpublished decision noting without issue that "[t]he operative complaint asserted claims for recovery of specific personal property (often referred to as 'claim and delivery'), and conversion"); *Eleanor Licensing LLC v. Classic Recreations LLC*, 21 Cal. App. 5th 599, 612 (2018) ("[Plaintiffs] did not plead or attempt to prove a cause of action for conversion. However, they did plead, and the trial court ruled they had proved, a cause of action for recovery of specific personal property, a code-based cause of action (see Code Civ. Proc., § 627), often incorrectly referred to as a 'claim and delivery action.'").

---

[12] This distinction helps explain why Plaintiff can properly bring both an action for conversion and specific recovery.

The "essential elements of an action for recovery of specific personal property are (1) the plaintiff's right to possession of tangible property at the time of commencement of the action and (2) the defendant's actual and wrongful possession of the property." *Brown v. Stroud*, No. CV 08-2348 VRW, 2011 WL 13312050, at *7 (N.D. Cal. Jan. 28, 2011); *see also Rathbun v. Hill*, 129 Cal. App. 601, 606 (1933) ("In an action in replevin or claim and delivery, being an action for the recovery of specific personal property, in order to sustain a judgment for the plaintiff, it must be shown that possession was in the defendant at the time of the beginning of the action, or that he had the power to make delivery of the personal property for the recovery of which the action is prosecuted." (quotation omitted)).  Some courts also suggest that a plaintiff must first demand possession before bringing this kind of cause of action.  *See Foster*, 61 Cal. App. 5th at 1021.

The California Commercial Code also states that "[a]fter default, a secured party . . . may . . . [r]educe a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." *Id.* § 9601(a)(1).  A security interest is enforceable against a debtor if: "(1) [v]alue has been given; (2) [t]he debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) . . . [t]he debtor has signed a security agreement that provides a description of the collateral." *Id.* § 9203(b).

Plaintiff has introduced undisputed evidence establishing that it has an enforceable security interest in the collateral and that it is entitled to specific recovery.  Plaintiff has introduced evidence that (1) Defendants pledged various physical and cash collateral to Plaintiff in exchange for the four loans, as memorialized in each of the agreements and various UCC financing statements, *see* Tennant Decl. ¶¶ 9, 19, 26, 32; Ex. 1 at 20; Ex. 2; Ex. 4 at 27; Ex. 6; Ex. 8 at 47; Ex. 9; Ex. 11 at 58–62; and (2) Plaintiff demanded Defendants send the collateral upon default, *see* Ex. 13.  Defendants do not dispute that they have not yet provided the collateral, except to say that they are trying to help Plaintiff sell or dispose of the laundromats.  Opp. at 2.

Defendants assert that "Plaintiff has not established entitlement to immediate possession of the collateral as a matter of law." Opp. at 3.  They offer no evidence to support that assertion and do not explain what Plaintiff has failed to establish.  Accordingly, the Court **GRANTS** the motion

United States District Court
Northern District of California

as to Plaintiff's Claim Nine.[13]  "[T]he law permits plaintiffs to simultaneously seek the cumulative remedies of monetary judgment and judicial foreclosure to enforce a security interest," *SA Acquisition Prop. XXV, LLC v. LaGrange*, No. 8:18-CV-02203-JLS-ADS, 2019 WL 8163815, at *6 (C.D. Cal. Apr. 22, 2019) (citing Cal. Com. Code. § 9601), though Plaintiff's eventual monetary recovery will be reduced "upon the recovery and disposition of the . . . collateral," *Bank of the W. v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *8 (N.D. Cal. June 17, 2008) (quotation omitted).

## IV.   CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for summary judgment, Dkt. No. 41.  The Court **GRANTS** summary judgment in Plaintiff's favor against Defendants Triple J Industries, Triple J Laundromat, and Sparkle Clean Laundromat for Claims One through Four and Seven through Nine.  The Court **DENIES** summary judgment against these corporate Defendants for Claims Five and Six.  The Court **STAYS** the action as to Defendants Chao and Lee and **DENIES** the motion with respect to Claims Two, Four, Six, and Eight against these two Defendants.  The Court **DISMISSES** Plaintiff's conversion claim without prejudice. *See* Mot. at 20.

The Court further **SETS** a case management conference in this case on May 12, 2026, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The Court further **DIRECTS** the parties in the strongest terms possible to meet and confer and figure out how to resolve Claims Five and Six against the corporate

---

[13] The Court notes that there is no evidence that the automatic bankruptcy stay covers the collateral at issue here, which was put up by the corporate Defendants.  While the bankruptcy estate "extends even to property of the estate in which a creditor has a secured interest," *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983), "[a] membership interest in a limited liability company is personal property and is not a direct interest in real property owned by the company."  *In re Kuiken*, 484 B.R. 766, 769 (B.A.P. 9th Cir. 2013) (applying California LLC law).

United States District Court
Northern District of California

Defendants in light of this order.

**IT IS SO ORDERED.**

Dated:    5/7/2026

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

14